# EXHIBIT A

UNITED STATES BANKRUPTCY COURT MCALLEN SOUTHERN TEXAS

**PROOF OF CLAIM**

| Name of Debtor **ANGEL R ROJAS** | Case Number **0770058** |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**Citicorp Trust Bank, fsb**
**f/k/a Travelers Bank & Trust**

Name and address where notices should be sent:

**Citicorp Trust Bank, fsb**
**f/k/a Travelers Bank & Trust**
**P.O. Box 168728**
**Irving, TX 75016-8728**

Telephone number: **(888)  800-5164**

Account or other number by which creditor identifies debtor:
**0002622720**

[ ] Check box if you are aware that anyone else has filed a proof of claim relating to your claim, attach copy of statement giving particulars.

[ ] Check box if you have never received any notices from the bankruptcy court in this case.

[X] Check box if the address differs from the address on the envelope sent to you by the court.

THIS SPACE IS FOR COURT USE ONLY

Check here [ ] replaces
if this claim [ ] amends  a previously filed claim, dated: _____

**1.  Basis for Claim**
- [ ]  Goods sold
- [ ]  Services performed
- [X]  Money loaned
- [ ]  Personal  injury/wrongful  death
- [ ]  Taxes
- [ ]  Other: _____

**2.  Date debt was incurred:**
**02/29/00**

[ ] Retiree benefits as defined in 11 U.S.C. § 1114(a)
[ ] Wages, salaries, and compensation (Fill out below)
Last four digits of SS#: _____
Unpaid  compensation  for  services  performed
From _____ to _____
      (date)            (date)

**3.  If court judgment, date obtained:**

**1.  Total Amount of Claim at Time Case Filed:**   $_____      **$81102.74**   _____   _____   _____
(unsecured)            (secured)        (priority)         (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

[X] Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach itemized statement of all interest or additional charges.

**5.  Secured Claim.**
[X] Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
[X] Real Estate      [ ] Motor Vehicle   [ ] Other
Value of Collateral:  $ _____
Amount of arrearage and other charges at time case filed included in secured claim, if any **$29044.19**

**6.  Unsecured Nonpriority Claim $**
[ ] Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securitizing it, or if c) none or only part of your claim is entitled to priority.

**7.  Unsecured Priority Claim.**
[ ] Check this box if you have an unsecured priority claim.
Amount entitled to priority $ _____
Specify the priority of the claim:
[ ] Wages, salaries, or commissions (up to $4,925).* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier 11 U.S.C. § 507(a)(3)
[ ] Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4)
[ ] Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6)
[ ] Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7)
[ ] Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8)
[ ] Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___)
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8.  Credits:**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9.  Supporting  Documents:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS.  If the documents are not available, explain.  If the documents are voluminous, attach a summary.

**10.  Date-Stamped  Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date **02/23/07** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| | /s/ Dianne Whatley, Bankruptcy Manager |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

UNITED STATES BANKRUPTCY COURT MCALLEN-SOUTHERN, TEXAS

| Name of Debtor | Case Number |
|---|---|
| ANGEL R ROJAS | 0770058 |

Name of Creditor:

**Citicorp Trust Bank, fsb**                              **f/k/a Travelers Bank & Trust**

## Account Information

**Loan Number: 0002622720**
Real Estate Property Description:

Property Address:     1306 CAMELIA STHIDALGO     TX 78557

Note Date:          02/29/00
Maturity Date:       03/2023
Original Balance:    55985.65
Interest Rate:       14.50

**Statement of Arrearage**

| | |
|---|---|
| Total Due on 02/05/07 for 25 | |
| Principal & Interest Payments: | |
| May include earned uncollected interest | 16068.52 |
| | |
| Tax and/or Insurance Advances | |
| May include advances made for Non-Escrow Accounts | 3136.10 |
| | |
| Total Due unpaid Corporate Advances: | 6102.66 |
| | |
| Total Due unpaid Expense Advances: | 3736.91 |
| | |
| Total Payments Unapplied: | .00 |
| | |
| **Total Arrearage Due on 02/05/07 :** | **29044.19** |

5-85-BK <Z27POC_TRUSTEE_CITY>
Revised   09/13/05

# PROOF OF CLAIM ADDENDUM
## FOR RESIDENTIAL HOME MORTGAGE PAID THROUGH PLAN

Debtor Name (s) _Angel R. Rojas_ Bk Case # _07-70058_

Address of Mortgaged Property _1306 Camelia St. Hidalgo, TX 78557_

Creditor Name _Citicorp Trust Bank_ Debtor Acct # _2622720_

Payment Address _P.O. Box 168728_

City _Irving_ State _TX_ Zip _75016_ Phone _888-800-5164_

Creditor Attorney Name _____

Attorney Address _____

City _____ State _____ Zip _____ Phone _____

### Mortgage Information

Current Principal Balance _53,794.92_

Regular Monthly Payment Amount _$665.71_ Current Interest Rate _14.05080_

Is this a variable interest loan?                                  YES   (NO)
If yes, date of next adjustment _____
Are property taxes included in the monthly payment?   YES   (NO)
Is insurance included in the monthly payment?            YES   (NO)
Is the loan due in full and payable in less than 5 years   YES   (NO)
If yes, due date _____

### Arrearage Calculation

_24_ monthly payment of _665.71_                    $15,977.04

_1_ monthly payment of _$91.48_                      $91.48 ²

_____ monthly payment of _____
Late fees of _____ per month
Escrow shortage: tax amt _$3136.10_                  $3136.10 — detail?
Attorney fees for _prior bankruptcy_                 $1602.60 — not atty fees
Other (describe) _Uncollected late charges_          $432.64 — not on pay history
Other (describe) _Fax Fee_                           $15.00
Other (describe) _BPO_                               $317.00 —
Other (describe) _Pre-con FCL_                       $2912.27 — missing
Other (describe) _____
Total arrearage amount to be cured in the plan       $29,044.19
***Creditor must notify Trustee of any and all changes to monthly mortgage payment.***

2622720

854596

RETURN TO:  SMI/Wesley Hess
P.O. Box 540817          ANGEL R. ROJAS A
Houston, TX 77254-0817      Job :770_990

# DEED OF TRUST SECURED BY HOMESTEAD

THE STATE OF TEXAS

COUNTY OF HIDALGO          } KNOW BY THESE PRESENTS:

THIS DEED OF TRUST (SECURITY INSTRUMENT) SECURES AN EXTENSION OF THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.

HOMEOWNERS WHO ENTER INTO AN AGREEMENT EVIDENCED BY THIS DEED OF TRUST WILL BE GIVING A LIEN ON THEIR HOMESTEAD.

Date: 02/24/2000

ANGEL R. ROJAS AND WIFE, YANETT M. ROJAS

hereinafter termed "Grantors," whether one or more, for the purpose of securing the indebtedness hereinafter described and Grantors' performance under this instrument, and in consideration of the sum of TEN DOLLARS ($10.00) to us in hand paid, the receipt of which is hereby acknowledged, and for the further consideration of the uses, purposes, and trusts hereinafter set forth,

Do hereby irrevocably grant, sell, and convey unto _____
CD LIESKE
_____ , herein termed "Trustee," of Irving, Texas, and said Trustee's substitutes or successors, in trust, with power of sale after judicial foreclosure, for TRAVELERS BANK & TRUST, FSB _____ , herein termed "Beneficiary," the following described property (the "Property") situated in HIDALGO _____ , County, Texas:

ALL OF LOT 14, BLOCK 4, RIO LARGO ESTATES, AN ADDITION TO THE CITY OF HIDALGO, HIDALGO COUNTY, TEXAS, ACCORDING TO THE MAP RECORDED IN VOLUME 31, PAGE 151, MAP RECORDS IN THE OFFICE OF THE COUNTY CLERK OF HIDALGO COUNTY, TEXAS.

ASSESSOR'S PARCEL NO. R3113 00 004 0014 00

The Property is located at 1306 CAMELIA ST HIDALGO, TX 78557 _____

This Deed of Trust secures the repayment of the indebtedness evidenced by Grantors' Note (the "Note") dated 02/24/2000 , in the original principal amount of $ 55,985.65 , and all extensions and renewals thereof, with interest thereon. The Note is repayable in monthly installments of principal and interest, with the unpaid balance of the Note due and payable on 03/01/2030 if not paid in full before that date. This Deed of Trust does not and will not secure any other indebtedness now or hereafter owing to Lender.

A. Grantors agree and warrant:

  1. Grantors will pay all Note payments when due in accordance with the terms of the Note and this Deed of Trust.

  2. Grantors will pay all taxes and assessments on the property when due.

  3. Grantors will make all payments when due and perform all convenants with respect to any prior mortgage, deed of trust, security agreement, or any other lien document that created a prior security interest or encumbrance on the Property. Grantors will promptly deliver to Beneficiary any notices that Grantors receive from the holder(s) of any such prior lien or encumbrance. Grantors will not allow any modification or extension of nor request any further advances under any note or agreement secured by any such prior lien or encumbrance without Beneficiary's prior written consent.

TX 0377-8  11/98        **Original (Recorded)    Copy (Branch)    Copy (Customer)**        Page 1 of 4

2622720    02/24/2000

ANGEL R ROJAS  YANETT M ROJAS

4. Grantors will preserve this lien's priority on the Property as it is established in this Deed of Trust.

5. Grantors warrant that Grantors are the owners of the Property and have the right to irrevocably grant, sell, and convey the Property in trust to Trustee, and that Grantors will defend the title to the Property.

6. Grantors warrant that the Property is unencumbered except for encumbrances of record.

7. Grantors will keep the Property in good repair and condition, make all repairs as necessary, and not allow any waste or deterioration of the Property.

8. Grantors will insure and keep insured all improvements on the Property against loss or damage by fire, windstorm, and any other hazard as may be reasonably required from time to time by Beneficiary. Grantors will provide proof of insurance to Beneficiary upon request.

9. That, in the event Grantors shall fail to keep the improvements on the property hereby conveyed in good repair and condition, or to pay promptly when due all taxes and assessments, as aforesaid, or to preserve the prior lien of this Deed of Trust on said property, or to keep the buildings and improvements insured, as aforesaid, or to deliver the policy, or policies, of insurance or the renewal thereof to Beneficiary, as aforesaid, then Beneficiary may, at his option, but without being required to do so, make such repairs, pay such taxes and assessments, purchase any tax title thereon, remove any prior liens, and prosecute or defend any suits in relation to the preservation of the prior lien of this Deed of Trust on said property, or insure and keep insured the improvements thereon in an amount not to exceed that above stipulated; that any sums which may be so paid out by Beneficiary and all sums paid for insurance premiums, as aforesaid, including the costs, expenses and attorney's fees paid in any suit affecting said property when necessary to protect the lien hereof shall bear interest from the dates of such payments at the rate stated in said Note(s) or other evidences of Indebtedness and shall be paid by Grantors to Beneficiary upon demand, at the same place at which said Note is payable, and shall be deemed a part of the Indebtedness hereby secured and recoverable as such in all respects.

Grantor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Grantor shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Grantor shall promptly give Beneficiary written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Grantor has actual knowledge. If Grantor learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Grantor shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

10. Grantors will provide flood insurance at any time the Property is in a flood hazard area and upon the request of Beneficiary.

11. If the Property includes or is a unit in a condominium or a planned unit development, Grantors will perform all o Grantors' duties under the covenants, by-laws, and regulations of the condominium or planned unit development.

12. Grantors will give Beneficiary prompt notice of any pending or threatened action by any entity to purchase or take any of all of the Property through condemnation or any other means, and Grantors authorized Beneficiary to intervene Grantors' names in any of the above described proceedings.

13. Grantors represent that the Property is not designated for agricultural use as provided by statues governing property tax.

14. Occupancy, Preservation, Maintenance and Protection of the Property; Grantor's Loan Application; Leaseholds. Gran now occupies and uses the Property as Grantor's Texas homestead and shall continue to occupy the Property as Grantor Texas homestead for at least one year after the date of this Security Instrument. Grantor shall not destroy, damage impair the Property, allow the Property to deteriorate, or commit waste on the Property. Grantor shall be in default if forfeiture action or proceeding, whether civil or criminal, is begun that in Beneficiary's good faith judgment could r in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Benefici security interest. Grantor may cure such a default and reinstate, as provided for in the Default provision of this Dec Trust, by causing the action or proceeding to be dismissed with a ruling that, in Beneficiary's good faith determina precludes forfeiture of the Grantor's interest in the Property or other material impairment of the lien created by Security Instrument or Beneficiary's security interest. Grantor shall also be in default and may be held personally liab debt evidenced by the Disclosure Statement, Note and Security Agreement if Grantor gave materially false or inac information or statements to Lender (or failed to provide Beneficiary with any material information) in connection wi loan evidenced by the Note, including, but not limited to, representations concerning Grantor's occupancy of the Pr as a Texas homestead.

B. Beneficiary's Rights:

1. Beneficiary may appoint in writing a substitute or successor trustee, succeeding to all rights and responsibilities of T

2. If the proceeds of the Note are used to pay any debts secured by prior liens on the Property, Beneficiary is subrogated to all the rights and liens of the holders of any debt so paid.

3. If Grantors fail to perform any of Grantor's duties or obligations, Beneficiary may perform those obligations and be reimbursed by Grantor on demand at the place where the Note is payable for any sums so paid, plus interest on those sums from the dates of payment at the rate of interest stated in the Note for matured, unpaid amounts. The sum to be reimbursed shall be secured by this Deed of Trust.

## C. Default:

1. Grantors will be in default if any party obligated on the Note fails to make payment when due or if a breach occurs under the terms of this Deed of Trust or any other document executed for the purpose of securing the Note.

2. In the event of default, if the default continues after Beneficiary gives Grantors notice of the default and the time within which it must be cured as may be required by law or written agreement, Beneficiary may declare the unpaid principal balance and earned interest on the Note immediately due. Grantors will never be charged any unearned interest.

3. If Grantors do not cure any default, after such default, failure to cure, and acceleration of the Note, Beneficiary may request the Trustee to petition a court of competent jurisdiction to issue an order of foreclosure. The Trustee hereunder shall be required to comply with all applicable statutes and the court order concerning any foreclosure sale, including the notice of sale, time, terms, and place of sale description of the Property to be sold pursuant to the judicial foreclosure.

4. If, after judicial foreclosure proceedings, the Property is sold, the Trustee shall make and deliver a deed to the Property sold that conveys absolute title to the purchaser, and shall pay to Beneficiary, to the extent allowed by law, all moneys advanced by Beneficiary pursuant to the Note, plus earned interest. Beneficiary may purchase the Property.

5. Beneficiary's acceptance of any sum in payment or partial payment on the Note after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Beneficiary's rights. By not exercising any remedy in the event of Grantors' default Beneficiary does not waive Beneficiary's right to subsequently consider the event a default if it happens again.

## D. Beneficiary's Right:

All agreements between Beneficiary and Grantor are hereby expressly limited so that in no event shall any agreement between Beneficiary and Grantor, or between either of them and any third party, be construed not to allow Beneficiary a reasonable time to comply with Beneficiary's obligations under the Extension of Credit. Grantor understands that the Extension of Credit is being made on the condition that Beneficiary shall have a reasonable time to comply with any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action promised on failure of Beneficiary to comply, Grantor will advise Beneficiary of the noncompliance by written notice and will give Beneficiary a reasonable time to comply. Grantor will cooperate in reasonable efforts to effectuate any compliance. Only after Beneficiary has received said notice, has had a reasonable time to comply, and has failed to comply, shall all principal and interest be forfeited, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by the Beneficiary to comply with its obligations under this Extension of Credit.

In the event that, for any reason whatsoever, any obligation of Grantor or of Beneficiary pursuant to the terms or requirements hereof or of any other loan document shall be construed to violate any of the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution, then any such obligation shall be subject to the provisions of this paragraph, and such document shall be automatically reformed, without the necessity of the execution of any amendment or new document, so that Grantor's or Beneficiary's obligations shall be modified to conform to the Texas Constitution, and in no event shall Grantor or Beneficiary be obligated to perform any act, or be bound by any requirement which would conflict therewith.

All agreements between Beneficiary and Grantor are expressly limited so that any interest, loan charge or fee collected or to be collected (other than by payment of interest) from Grantor, any owner or the spouse of any owner of the Property in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees is finally interpreted so that the interest, loan charges or fees that the Beneficiary has collected or is entitled to collect in connection with this loan exceed the permitted limits, or a determination is made at any time by Beneficiary that interest, loan charges or fees that the Beneficiary has collected or is entitled to collect in connection with this loan exceed the permitted limit, then: (i) any interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit; and (ii) any sums already collected from Grantor which exceeded permitted limits will be refunded to Grantor. The Beneficiary may choose to make this refund by reducing the principal Grantor owes under the Note or by making a direct payment to Grantor. If a refund reduces principal, the reduction will be treated as a partial prepayment. Grantor's acceptance of any such refund will constitute a waiver of any right of action Grantor might have arising out of such overcharge.

It is the express intention of the Beneficiary and Grantor to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of the Disclosure Statement, Note or Security Agreement or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then any promise, payment, obligation or provision shall be reduced to the limit of such validity, or eliminated as a requirement if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

Beneficiary's right-to-comply as provided in this paragraph shall survive the payoff of the Extension of Credit. The provision of this paragraph shall supersede any inconsistent provision of the Disclosure Statement, Note or Security Agreement.

M ROJAS                                2622720      02/24/2000

E. General Provisions:

1. When the context requires, singular nouns and pronouns include the plural and vice versa.

2. Within a reasonable time after termination and full payment of the extension of credit secured by this Deed of Trust, Beneficiary will cancel and return the Note to the owner of the homestead subject to this Deed of Trust and will give the owner, in recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit.

3. The Lender, Beneficiary, or any holder of the Note for the extension of credit secured by this Deed of Trust shall forfeit all principal and interest of the extension of credit if the Lender, Beneficiary, or holder fails to comply with the Lender's, Beneficiary's, or holder's obligation under the extension of credit within a reasonable time after the Lender, Beneficiary, or holder is notified by the borrower (Grantors) of the Lender's, Beneficiary's, or holder's failure to comply.

4. This Deed of Trust shall bind, inure to the benefit of, and may be exercised by successors in interest of all parties.

**THIS DEED OF TRUST SECURES AN EXTENSION OF THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.**

**THIS CONTRACT IS SUBJECT TO REGULATION BY THE OFFICE OF CONSUMER CREDIT COMMISSIONER, 2601 NORTH LAMAR, AUSTIN, TEXAS 78705-4207, (512) 936-7600 OR 1-800-538-1579.**

―――――――――――――― REQUEST FOR NOTICE OF DEFAULT ――――――――――――――
**AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

By signing, Grantors agree to the terms, conditions, and covenants contained in this Deed of Trust and in any attachments, and acknowledge receipt of a copy of this Deed of Trust.

*Angel L. Rojas*          2/24/00          *Yanett M. Rojas*   2/24/00
ANGEL R ROJAS                 Date          YANETT M ROJAS                 Date
(Signature)                                 (Signature)

### ACKNOWLEDGEMENT

STATE OF TEXAS                    *
COUNTY OF __Hidalgo__            *

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared __Angel R. Rojas__ and __Yanett M. Rojas__ known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this __24TH__ day of __FEBRUARY__ __2000__.

Seal


PHYLLIS A. WILKS
Notary Public
STATE OF TEXAS
My Comm. Exp.09-20-2003

Notary Public for the State of Texas

My Commission expires _____ .

Mailing address of Trustee:

CD LIESKE

100 COMMERCE DRIVE
NEWARK DE 19713

Mailing address of Beneficiary:

TRAVELERS BANK & TRUST,
FSB
100 COMMERCE DRIVE
NEWARK DE 19713

AFTER RECORDING RETURN TO: Travelers Bank & Trust, fsb
                           P.O. Box 410
                           Hanover, MD 21076

Filed for Record in:
Hidalgo County
by Juan D. Salinas III
County Clerk
On: Mar 15,2000   at   08:59A
As a
Recording
Document Number:
Total Fees      :          854596
                            15.00
Receipt Number - 270752
              By,
         Norma Garza

TX 0377-8  11/98          Original (Recorded)    Cont(Parent)

Disclosure Statement, Note and Security Agreement

| Borrower(s) (Name and Mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| ANGEL R ROJAS<br>YANETT M ROJAS<br>1306 CAMELIA ST<br>HIDALGO TX 78557 | TRAVELERS BANK & TRUST,<br>FSB<br>100 COMMERCE DRIVE<br>NEWARK DE 19713 | 2622720 |
| | | Date of Loan<br>02/24/2000 |

| ANNUAL PERCENTAGE RATE The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost Borrower. | Amount Financed The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 14.59 % | $ 185,630.30 | $ 54,033.00 | $ 239,663.30 |

Payment Schedule:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 1 | $ 709.31 | 04/01/2000 |
| 359 | $ 665.61 | MONTHLY BEGINNING 05/01/2000 |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties, if applicable.

**Security:** Borrower is giving a security interest in Real Property.

**Late Charge:** If a payment is more than 15 days late, Borrower will be charged 5.0 % of the amount in default.

**Prepayment:** If Borrower pays off early, Borrower will not have to pay a penalty.

Additional Information:

| PRINCIPAL $ 55,985.65 | POINTS/FEES $ 1,630.65 | ADMINISTRATIVE FEE $ NONE | DATE CHARGES BEGIN 02/29/2000 |
|---|---|---|---|

**Insurance Disclosure:**
If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. Additionally, if the property is located in a flood plain, flood insurance will be required. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender. If required insurance terminates before the loan is repaid, Borrower promises to obtain acceptable substitute insurance. If Borrower is in default, and Lender demands that Borrower immediately repay the loan in full, Borrower authorizes the insurer providing any required insurance that is financed by Lender in connection with this loan to terminate such policy or coverage, upon request of Lender, and directs that the insurer deliver the premium refund, if any, to the Lender which may at its option apply to the unpaid balance of the loan or return it to Borrower. Any such application of premium refund will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

**Payment Waiver Program ("PWP")**
Borrower is not required to purchase Payment Waiver protection to obtain credit. Lender's decision to grant credit will not be and is not affected by Borrower's decision to purchase or refuse to purchase optional Payment Waiver Protection.

Payment Waiver is an optional provision of Borrower's loan agreement and is described and defined in the attached Payment Waiver Program Addendum, which is incorporated herein by reference and governs Lender's agreement and Borrower's benefits. In return for a fee billed monthly and added to the scheduled monthly loan payment amount indicated above, and under certain conditions, the Lender will waive the scheduled monthly payment on Borrower's loan agreement and the PWP monthly fee for a period of time upon the occurrence of a Disability or Involuntary Unemployment. The Payment Waiver is not insurance and will not pay the outstanding account balance. Finance Charges accrue on the loan amount during any Waiver Period. Borrower should refer to and inquire about the terms and conditions, including, without limitation, the monthly fee, terms, eligibility, exclusions, termination date, waiting period and maximum waiver limit, contained in the attached PWP Addendum.

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly fee in addition to the loan payment disclosed above.

I/We request Payment Waiver protection as described in the attached PWP Addendum. It is understood that coverage will extend solely to the Borrower named on the PWP Addendum (the Covered "BORROWER").

PWP Monthly Fee: $     36.88

Signature of Borrower/Borrowers and Date:

*Angel R Rojas  2/24/00*
*Yanett M Rojas 2/24/00*
N/A
N/A
N/A

**THIS AGREEMENT EVIDENCES AN EXTENSION OF THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.**

TERMS: In this Disclosure Statement, Note and Security Agreement ("Agreement") the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one Borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender whose name and address are shown above.

PROMISE TO PAY: In return for a loan that Borrower has received, Borrower promises to pay, in accordance with the Payment Schedule shown above, to the order of Lender the Principal Amount shown above, plus interest on the unpaid Principal Balance from the Date Charges Begin until fully paid at the Agreed Rate of Interest of 14.0508 %.

Any amounts shown above as Points/Fees or Administrative Fee have been paid by Borrower as prepaid interest. Any Points/Fees or Administrative Fee are fully earned at the time the loan is made and are not subject to refund, in the event of prepayment, either voluntary or by acceleration. Principal and interest shall be payable in consecutive monthly installments in the amounts shown above, except that any appropriate adjustments will be made to the final payment. The payments shall begin on the first payment date shown above, and shall continue on the same date on each succeeding month, until the Principal Balance is fully paid unless this loan is subject to a call provision as indicated herein in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal, interest and all other charges provided for in this Disclosure Statement, Note and Security Agreement shall, including any accrued but unpaid PWP fees(s), be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines. Lender, at its option, may collect interest from and after maturity upon the unpaid Principal balance at the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement or at the rate of 18%. Each payment shall be applied first to interest and fees, computed to the date of payment and the remainder to the balance due (which may include a PWP fee). Each portion of a payment applied to Principal shall be applied first to any recording, appraisal, title insurance and title examination fees, document preparation fees, settlement fees, and other closing fees, with the remainder applied to the PWP monthly fee, if any, and the Principal balance.

Borrower's Initials: *ARR* *MR*

PREPAYMENT: Borrower may prepay one or more full installments at any time without penalty, and Borrower may prepay the Note in full at any time without penalty. In the event the Note is prepaid in fully by Borrower prior to the Final Payment Date, Borrower will not be charged any unearned interest. Interest on this Note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under applicable law, and any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. In the event of acceleration or required or permitted repayment, any such excess interest shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

SECURITY AGREEMENT:

[X] A.  If this box is checked, Borrower's loan is secured by a Mortgage or Deed of Trust of even date on real property which requires Lender's prior written consent to a sale or transfer of the encumbered real property located at 1306 CAMELIA ST
HIDALGO TX 78557

This indebtedness is not secured by any other security interest securing any other indebtedness now or hereafter owed to Lender, and the security interest granted herein does not secure any other indebtedness owed to Lender.

See the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

OWNERSHIP OF PROPERTY: Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing.

USE OF PROPERTY: Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

TAXES AND FEES: Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid principal balance of the loan.

REQUIRED INSURANCE: If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan. In any such event, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance.

LATE CHARGE: If a payment is more than  15  days late, Borrower agrees to pay a late charge of    5.0    % of the amount of the unpaid installment in default. Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

RETURNED PAYMENT FEE: Lender may charge Borrower a fee of $   10.00  , plus actual expenses incurred, for each check, draft, order of withdrawal or like instrument or payment order given to Lender by Borrower or by Borrower's agent in connection with this loan that is not honored because of insufficient or uncollected funds or because no such account exists.

DEFAULT: Borrower will be in default if (1) Borrower does not make any scheduled payment under this Agreement when due; (2) Borrower is, or any other person puts Borrower in bankruptcy, insolvency or receivership; (3) Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan; (4) Borrower fails to fulfill any promise made under this Agreement; or (5) Borrower defaults in the performance of any terms, conditions or provisions of any Mortgage or deed of trust securing the payment of this Agreement or any other mortgage or deed of trust on the real property.

Subject to Borrower's right to any notice of default, right to cure default, and any other applicable laws, if Borrower defaults, Lender may accelerate the final due date of this Agreement and demand that Borrower pay the entire unpaid Principal balance and unpaid interest at once. In the event of acceleration, Borrower will never be required to pay any unearned interest. Lender's failure to exercise its option to accelerate during any default by Borrower regardless of any prior forebearance. If this debt is referred for collection to an attorney not a salaried employee of Lender, Lender shall be entitled to collect all reasonable costs and expenses of collection, including, but not limited to, actual court costs and reasonable attorney's fees assessed by a court.

LOAN CHARGES AND FEES: All agreements between Lender or Note Holder and Borrower are expressly limited so that any interest, loan charges or fees (other than interest) collected or to be collected from Borrower, any owner or the spouse of any owner of the property described above in connection with the origination, evaluation, maintenance, recording, insuring or servicing of the Extension of Credit shall not exceed, in the aggregate, the highest amount allowed by applicable law.

If a law, which applies to this loan and which sets maximum interest, loan charges or fees, is finally interpreted so that the interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limits, or a determination is made at any time by the Note Holder that interest, loan charges or fees collected or to be collected in connection with this loan exceed the permitted limit, then: (i) any such interest, loan charges or fees shall be reduced by the amount necessary to reduce the interest, loan charges or fees to the permitted limit, and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender or Note Holder may choose to make this refund by reducing the principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment. Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

It is the express intention of the Lender or Note Holder and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution. If, from any circumstance whatsoever, any promise, payment, obligation or provision of this Disclosure Statement, Note and Security Agreement or any other loan document involving this Extension of Credit transcends the limit of validity prescribed by applicable law, then such promise, payment, obligation or provision shall be reduced to the limit of such validity or eliminated as a requirement and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document.

The provisions of this paragraph shall supersede any inconsistent provision of this Note or the Security Instrument.

OTHER TERMS: To the extent permitted by applicable law, Borrower, endorsers, sureties and guarantors severally (i) waive presentment for payment, notice of non-payment, protest, notice of protest and diligence in bringing suit against any party hereto; (ii) consent that time of payment may be extended after maturity without notice; and (iii) waive all benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns.

Lender, at the time this loan is made, will provide Borrower (Owner) with a copy of all documents signed by Borrower (Owner) related to this extension of credit.

Within a reasonable amount of time after termination and full payment of this extension of credit, Lender will cancel and return this Note to Borrower (Owner) and give Borrower (Owner), in recordable form, a release of the lien securing this extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing this extension of credit.

Borrower may within 3 days after this extension of credit is made, rescind this extension of credit without penalty or charge.

Lender or any Holder of this Note for this extension of credit shall forfeit all principle and interest of this extension of credit if Lender or Holder fails to comply with their obligations under this extension of credit within a reasonable time after Lender or Holder is notified by Borrower (Owner) of Lender's or Holder's failure to comply.

GOVERNING LAW: Borrower and Lender agree that this loan is subject to applicable Federal, Delaware, and Texas law and regulations.

REFINANCING: The overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

(Intentionally left blank)

Borrower's Initials: _ARL_  _Ynn_

ANGEL R ROJAS  YANETT M ROJAS                                        2622720        02/24/2005

ARBITRATION PROVISION:

**READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF
YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

In consideration of Lender making the extension of credit described above and other good and valuable considerations, the receipt and sufficiency of which is acknowledged by both parties, it is further agreed as follows:

**Definitions for Arbitration Provision.** As used in this Arbitration Provision ("Provision"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) who execute this Provision, and their heirs, survivors, assigns, and representatives.
"We" or "Us" means Lender, any assignee, together with their respective corporate parents, subsidiaries, affiliates, predecessors, assignees, successors, employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"Credit Transaction" means any one or more past, present, or future extension, application, or inquiry of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.
"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything that concerns:
- This Provision;
- Any past, present, or future Credit Transaction;
- Any past, present, or future insurance, service, or product that is offered in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product; or
- Any act or omission by any of Us regarding any Claim.

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the applicable rules for arbitration, any Claim, except those specified below in this Provision, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act; (ii) the Streamlined Arbitration Rules and Procedures of J·A·M·S/Endispute, Inc. ("Administrator"); and (iii) this Provision, unless we both agree in writing to forgo arbitration. The terms of this Provision shall control any inconsistency between the rules of the Administrator and this Provision. You may obtain a copy of the arbitration rules by calling (800) 448-1660. Any party to this Provision may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claims pending arbitration, in any court having jurisdiction. Such motion may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment.

Examples of Claims that are governed by this Agreement include those involving:
- The Truth in Lending Act and Regulation Z;
- The Equal Credit Opportunity Act and Regulation B;
- State insurance, usury, and lending laws; fraud or misrepresentation, including claims for failing to disclose material facts;
- Any other federal or state consumer protection statute or regulation;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction.

**Claims Excluded from Arbitration.** The following types of matters will not be arbitrated. This means that neither one of us can require the other to arbitrate:
- Any action to effect a foreclosure to transfer title to the property being foreclosed; or
- Any matter where all parties seek monetary damages in the aggregate of $15,000.00 or less in total damages (compensatory and punitive), costs, and fees.

However, should either party initiate arbitration, the other party, at its option, may seek injunctive and monetary relief in arbitration. Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

**Additional Terms.**
**Administration of Arbitration.** Arbitration shall be administered by the Administrator, but if it is unable or unwilling to administer the arbitration, then J·A·M·S/Endispute, Inc. will administer any arbitration required under this Provision pursuant to its Streamlined Arbitration Rules and Procedures, except for any appeal, which will be governed by Rule 23 of the Comprehensive Arbitration Rules and Procedures of J·A·M·S/Endispute, Inc.
**Place of Arbitration.** The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.
**Timing of Hearing.** The arbitration hearing shall commence within ninety (90) days of the demand for arbitration made to the Administrator in accordance with its rules.
**Appeal.** Either You or We may appeal the arbitrator's award to a three-arbitrator panel selected through the Administrator, which shall reconsider de novo any aspect of the initial award requested by the appealing party. The expedited procedures of the Administrator shall not govern any appeal. An appeal will be governed by Rule 23 of the Comprehensive Arbitration Rules and Procedures of J·A·M·S/Endispute, Inc.
**No Class Actions/No Joinder of Parties.** You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your Claims. Similarly, You may not join with other borrowers to bring Claims in the same arbitration proceeding, unless all of the borrowers are parties to the same Credit Transaction.
**Limitation on Punitive Damages.** If applicable law permits the award of punitive damages and the arbitrator authorizes such an award, any punitive damages awarded to You or Us may not exceed the greater of $250,000.00 or three times the amount of actual compensatory damages awarded by the arbitrator.
**Depositions.** After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements over depositions will be resolved by the arbitrator.
**Costs.** The cost of any arbitration proceeding shall be divided as follows:
- The costs of the arbitration proceeding shall be divided and assessed by the Administrator in accordance with the Rules and Procedures of J·A·M·S/Endispute, Inc.
- Each party shall pay his/her own attorney, expert, and witness fees and expenses, unless otherwise required by law.
**Right of Rescission.** You may rescind any Credit Transaction within three business days after closing by returning all proceeds (if any) to Us with a written notification of Your rescission. If You rescind a Credit Transaction within three business days after closing, You may also rescind this Provision as it applies to the Credit Transaction that You rescinded. This right to cancel the Credit Transaction is in addition to any other right to cancel a Credit Transaction You may have under Federal or State law, or as may have been communicated to You in writing by Us in any loan solicitation, advertisement or other marketing related document.
**Governing Law.** This Provision is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.
**Severability.** If the arbitrator or any court determines that one or more terms of this Provision or the arbitration rules are unenforceable, such determination shall not impair or affect the enforceability of the other provisions of this Agreement or the arbitration rules.

**Special Acknowledgments.**
You understand and acknowledge by signing Your name to this Provision that: (i) a court and/or jury will not hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will constitute interstate commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1-9, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, (iv) the arbitrator may not give written reasons for his/her award, (v) rights to appeal an arbitration award are very limited, and (vi) the rights of the parties hereunder may not be exactly mutual in all respects.

**READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR
RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

_Angel R Rojas_                                                     (Seal)
ANGEL R ROJAS                                                    -Borrower

_Yanett M Rojas_                                                  (Seal)
YANETT M ROJAS                                                  -Borrower

Borrower's Initials: _ARR_ _ymr_

Original (Branch)        Copy (Customer)                        Page 3 of 4

The following notice applies only if this box is checked. ☐          2622720          02/24/2000

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

THIS AGREEMENT EVIDENCES AN EXTENSION OF THE TYPE OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION.

THIS CONTRACT IS SUBJECT TO REGULATION BY THE OFFICE OF CONSUMER CREDIT COMMISSIONER, 2601 NORTH LAMAR, AUSTIN, TEXAS 78705-4207. (512) 936-7600 OR 1-800-538-1579.

BORROWERS WHO ENTER INTO AN AGREEMENT EVIDENCED BY THIS DOCUMENT AND THE ACCOMPANYING DEED OF TRUST OR MORTGAGE WILL BE GIVING A LIEN ON THEIR HOMESTEAD.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:

SIGNED:

_____ (Seal)
ANGEL R ROJAS                -Borrower

_____ (Seal)
YANETT M ROJAS               -Borrower

_____ (Seal)
                             -Borrower

N/A

TRAVELERS BANK & TRUST, FSB

By: _____
    LR Banner          (Name and Title)      Service Rep

**SECURITY INTEREST OF NONOBLIGOR:** Although a nonobligor who grants a security interest in connection with this Agreement is not personally liable for payment of the loan, nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement.

_____N/A_____ (Seal)          _____N/A_____ (Seal)
Signature        Date          Signature        Date

# EXHIBIT B

# THE STONE LAW FIRM, P.C.

**ELLEN C. STONE**

*Helping People When They Need It Most.....*

*Of Counsel*
**ANTONIO MARTINEZ, JR.**

Harlingen Office:
1105 E. Tyler
Harlingen, Texas 78550
(956) 440-0398

"PRINCIPAL OFFICE"
62 E Price Rd.
Brownsville, Texas 78521
(956) 546-9398

**IRS Problems***
**Business and Consumer Bankruptcy * Consumer Law**
4900 N. 10th Street, Ste E-2 ● McAllen, Texas 78504
Tel: (956) 630-2822 ● Fac: (956) 631-0742

### We are a Debt Relief Agency.
### We Help People File for Bankruptcy Relief Under the Bankruptcy Code.

December 10, 2007

VIA EMAIL at SDECF@BBWCDF.com
VIA EMAIL at SophiaR@bbwcdf.com
and VIA U.S. Mail

Jeffrey Fleming
BARRETT, BURKE, WILSON CASTLE DAFFIN & FRAPPIER, L.L.P.
1900 St. James Place, Suite 500
Houston, TX 77056

Re: Angel R. Rojas and Yanett M. Rojas; bankruptcy case no. 07-70058; in the U.S. Bankruptcy Court, S.D. Texas, McAllen Division

Dear Mr. Fleming:

As you know, we represent Angel and Yanett Rojas in the above referenced bankruptcy proceeding. Your client is Citicorp Trust Bank, FSB FKA Travelers Bank & Trust, Its Assigns and/or Successors in Interest in this case.

A hearing is pending on December 19, 2007 at 9:00 a.m., in McAllen, Texas, which has been continued from a prior hearing on October 24, 2007. The last hearing was continued at your request to allow you more time to obtain the information we have been requesting. To this date, no information has been provided.

Please provide the following information by Monday, December 17, 2007:

1. A detailed payment history from the inception of the loan which supports your client's position that the loan is in arrears in the amount stated in the proof of claim;

2. Proof of the assignment of the note to your client;

3. Proof that court approval was obtained in the prior bankruptcy or bankruptcies for the alleged $6,102.66 in attorneys fees claimed; and specifically, what were the charges and when were they incurred; and any supporting documentation you have indicating compliance with 11 U.S.C. Section 506 and Rule 2016(b) Disclosure of Compensation requirements.

Jeffrey Fleming

December 10, 2007

Page 2


4. A detailed explanation, including check dates, amounts and payees, on the escrow shortage of $3136.10;

5. A detailed explanation of the "uncollected late charges";

6. Documentation of the claimed "fax fee";

7. Supporting documentation of the "BPO", including reports issued by the person or entity engaged by your client to perform the service, for which $377.00 is claimed;

8. Detailed explanation and proof of the item described as "Pre-con FCL" in the amount of $2,912.27.

Thank you for your attention to this matter.

Very truly yours,

Ellen C. Stone


ECS/mo

cc: Angel and Yanett Rojas

# EXHIBIT C

**Mary Olivarez**

| | |
|---|---|
| **From:** | Sophia Manning [SophiaR@bbwcdf.com] |
| **Sent:** | Tuesday, December 18, 2007 2:39 PM |
| **To:** | Mary Olivarez |
| **Cc:** | Ellen Stone |
| **Subject:** | RE: Angel and Yanett Rojas Case No: 07-70058 |

Thank you, we will advise the attorney attending the hearing.

**From:** Mary Olivarez [mailto:molivarez@ellenstonelaw.com]
**Sent:** Tuesday, December 18, 2007 1:43 PM
**To:** Sophia Manning
**Cc:** 'Ellen Stone'
**Subject:** RE: Angel and Yanett Rojas Case No: 07-70058

Ms. Manning,

We just want to let you know, that we have requested a "PASS" for the  court hearing on 12/19/07.  The attorney is reviewing the documentation provided to us.

Thank you, Mary

**From:** Sophia Manning [mailto:SophiaR@bbwcdf.com]
**Sent:** Monday, December 17, 2007 2:31 PM
**To:** Ellen Stone; Mary Olivarez
**Subject:** RE: Angel and Yanett Rojas Case No: 07-70058

See attached payment history, BPO and miscellaneous correspondence from Citimortgage.  This is all the documentation received to-date.

Thank you

Sophia Manning
Legal Assistant
Barrett, Burke, Wilson, Castle, Daffin & Frappier, L.L.P.
1900 St. James Place, 5th Floor
Houston, TX 77056
713-693-2069 direct
713-693-2000 main
972-661-7702 fax
sophiar@bbwcdf.com

**From:** Ellen Stone [mailto:estone@ellenstonelaw.com]

1/8/2008

**Sent:** Tuesday, December 11, 2007 8:46 AM
**To:** Sophia Manning; Mary Olivarez
**Subject:** RE: Angel and Yanett Rojas Case No: 07-70058

Sophia,

I need answers to the specific questions I posed in my letter to Jeffrey Fleming yesterday.

Ellen C. Stone
THE STONE LAW FIRM, P.C.
62 E. Price Rd.
Brownsville, Texas 78521
(956) 546-9398
(956) 542-1478
estone@ellenstonelaw.com

**From:** Sophia Manning [mailto:SophiaR@bbwcdf.com]
**Sent:** Tuesday, December 11, 2007 7:21 AM
**To:** Mary Olivarez
**Cc:** Ellen Stone
**Subject:** RE: Angel and Yanett Rojas Case No: 07-70058

I forwarded your request to Citifinancial, please see below breakdown, per your prior request as provided by Citifinancial:

```
PROP TAXES - DELINQ - SCHOOL  5030.98
PROP TAXES - DELINQ - COUNTY  1523.81
FCL ATTORNEY FEE            865.00
TITLE SEARCH/REPORT         178.61
RECORDING FEE               175.00
TAX SEARCH                   72.04
LITIGATION FEES             150.00
   Total                    7995.4
   Paid                     1892.78
   Balance                  6102.66
```

Thanks

Sophia Manning
Legal Assistant
Barrett, Burke, Wilson, Castle, Daffin & Frappier, L.L.P.
1900 St. James Place, 5th Floor
Houston, TX 77056
713-693-2069 direct
713-693-2000 main
972-661-7702 fax
sophiar@bbwcdf.com

**From:** Mary Olivarez [mailto:molivarez@ellenstonelaw.com]
**Sent:** Monday, December 10, 2007 4:08 PM
**To:** Sophia Manning
**Cc:** 'Ellen Stone'

1/8/2008

**Subject:** Angel and Yanett Rojas Case No: 07-70058

If you have any questions, please call us.

thank you, Mary

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Notice of Confidentiality

This e-
mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition
mail and immediately delete this message from your system.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Notice of Confidentiality

This e-
mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition
mail and immediately delete this message from your system.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
Notice of Confidentiality

This e-
mail message and attachments, if any, are intended solely for the use of the addressee hereof. In addition
mail and immediately delete this message from your system.

1/8/2008

# Messages Received

Case # - 1749492
Case Type - Objection (Chapter 13)
Loan # - 2622720
Reference # - 00000000595900
Borrower - ANGEL R ROJAS
Property State - TEXAS

## Sophia Rios

**From:** Chandrashekar Kunder  (CitiMortgage, Inc. SBM with Citifinancial Mortgage Company, Inc.)

**To:** Sophia Rios (Barrett, Burke & Wilson (BK))

**Sent:** 12/17/2007 12:35 PM     **Required Reply:** No

**Subject:** RE: Resolve contested matter - need breakdown on att fees

Escrow deatils:
Paid on       Payee       Check #   Amount    Tax year
07/13/06    HIDALGO COUNTY 10036685  1635.31    2004-2005
09/14/06  SGIC/ASIC(insurance)20001538  1500.79

3136.10

# EXHIBIT D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 07-70058-M |
| | § | |
| ANGEL ROJAS and YANETT ROJAS | § | CHAPTER 13 |
| | § | |
| DEBTORS. | § | |
| | § | |
| ANGEL AND YANETT ROJAS | § | |
| | § | |
| v. | § | |
| | § | |
| CITICORP TRUST BANK, FSB | § | |
| f/k/a TRAVELERS BANK & TRUST; | § | |

**DEFENDANT'S RESPONSE TO DEBTORS' REQUESTS FOR ADMISSION**

**I.**

**REQUEST FOR ADMISSIONS**

**Request No. 1.**

    Admit that Claim No. 4 contains false amounts.

**Response:**

    **Deny**, as to the characterization of "false" in the Request.

**Request No. 2.**

    Admit that the amount claimed on the Addendum "Escrow shortage: tax amount $3136.10" is not, in fact solely for taxes.

**Response:**

    **Deny**, as to the phrase "claimed on the addendum." The addendum includes only an arrearage itemization, not a claim for the amount of the arrears. **Deny** that the $3,136.10 is not a proper expense for "Escrow shortage." **Admit** that the $3,136.10 consists partially of taxes of $1,635.31 (paid on or about July 10, 2006 and received by the tax office on July 24, 2006) + $1,500.79 for forced placed insurance after notice of an insurance lapse (paid on or about July 5, 2006).

**Request No. 3.**

Admit that on the Addendum, the amount listed for "Attorneys' fees for prior bankruptcy $6,102.66" is not, in fact, entirely for attorneys' fees in a prior bankruptcy.

**Response:**

**Deny** that the $6,102.66 listed in the arrearage calculation is not for actual fees or costs expended pursuant to the mortgage note and/or deed of trust. **Admit** that the $6,102.66 consists of $1,290.65 for foreclosure attorney fees and foreclosure costs paid on September 23, 2005 [ $865 attorney fees, $178.61 title search and report, $175 recording fee and $72.04 tax search] plus (+) $150.00 for attorney fees for objection to claim defense (paid January 25, 2007) plus (+) $5,030.98 paid on or about September 27, 2004 to Hidalgo ISD/City of Hidalgo for taxes for the years 2001 through 2004 and $1,523.81 paid on or about September 27, 2004 to Hidalgo County for taxes for the years 2001 through 2003 minus (-) $1,892.78 refund credited to Debtor's account, all of which is subject to document production from Debtor to verify who directly paid the taxes for these periods (Debtor or Creditor). Hidalgo ISD/City of Hidalgo tax records carry forward payments but do not go back prior to 2005 regarding specific receipts with respect to check numbers, amounts and payees.

**Request No. 4.**

Admit that Citicorp has no documents to support the amount listed on the Addendum as "Other (describe) pre-con FCL $2,912.27."

**Response:**

**Deny.** The $2,912.27 consists of foreclosure attorney fees and foreclosure costs paid commencing with the first default prior to Debtor's first bankruptcy filing.

**Request No. 5.**

Admit that on the Addendum, the "Escrow shortage: tax amount $3136.10" is actually comprised partially of amounts spent for insurance.

**Response:**

**Deny** that the $3,136.10 is not a proper expense for "Escrow shortage." **Admit** that the $3,136.10 consists partially of taxes of $1,635.31 (paid on or about July 10, 2006 and received by the tax office on July 24, 2006) + $1,500.79 for forced placed insurance after notice of an insurance lapse (paid on or about July 5, 2006).

**Request No. 6.**

Admit that on the Addendum, the $6,102.66 amount listed for "Attorneys' fees for prior bankruptcy" reflects, in part, school taxes.

**Response:**

**Deny** that the $6,102.66 listed in the arrearage calculation is not for actual fees or costs expended pursuant to the mortgage note and/or deed of trust.  **Admit** that the $6,102.66 consists of $1,290.65 for foreclosure attorney fees and foreclosure costs paid on September 23, 2005 [ $865 attorney fees, $178.61 title search and report, $175 recording fee and $72.04 tax search] plus (+) $150.00 for attorney fees for objection to claim defense (paid January 25, 2007) plus (+) $5,030.98 paid on or about September 27, 2004 to Hidalgo ISD/City of Hidalgo for taxes for the years 2001 through 2004 and $1,523.81 paid on or about September 27, 2004 to Hidalgo County for taxes for the years 2001 through 2003 minus (-) $1,892.78 refund credited to Debtor's account, all of which is subject to document production from Debtor to verify who directly paid the taxes for these periods (Debtor or Creditor).  Hidalgo ISD/City of Hidalgo tax records carry forward payments but do not go back prior to 2005 regarding specific receipts with respect to check numbers, amounts and payees.

**Request No. 7.**

Admit that on the Addendum, the $6,102.66 amount listed for "Attorneys' fees for prior bankruptcy" reflects, in part, county taxes.

**Response:**

**Deny** that the $6,102.66 listed in the arrearage calculation is not for actual fees or costs expended pursuant to the mortgage note and/or deed of trust.  **Admit** that the $6,102.66 consists of $1,290.65 for foreclosure attorney fees and foreclosure costs paid on September 23, 2005 [ $865 attorney fees, $178.61 title search and report, $175 recording fee and $72.04 tax search] plus (+) $150.00 for attorney fees for objection to claim defense (paid January 25, 2007) plus (+) $5,030.98 paid on or about September 27, 2004 to Hidalgo ISD/City of Hidalgo for taxes for the years 2001 through 2004 and $1,523.81 paid on or about September 27, 2004 to Hidalgo County for taxes for the years 2001 through 2003 minus (-) $1,892.78 refund credited to Debtor's account, all of which is subject to document production from Debtor to verify who directly paid the taxes for these periods (Debtor or Creditor).  Hidalgo ISD/City of Hidalgo tax records carry forward payments but do not go back prior to 2005 regarding specific receipts with respect to check numbers, amounts and payees.

**Request No. 8.**

Admit that on the Addendum, the $6,102.66 amount listed for "Attorneys' fees for prior bankruptcy" reflects, in part, a "FCL Attorney Fee."

**Response:**

**Deny** that the $6,102.66 listed in the arrearage calculation is not for actual fees or costs expended pursuant to the mortgage note and/or deed of trust.  **Admit** that the $6,102.66 consists of $1,290.65 for foreclosure attorney fees and foreclosure costs paid on September 23, 2005 [ $865 attorney fees, $178.61 title search and report, $175 recording fee and $72.04 tax search] plus (+) $150.00 for attorney fees for objection to claim defense (paid January 25, 2007) plus (+) $5,030.98 paid on or about September 27, 2004 to Hidalgo ISD/City of Hidalgo for taxes for the years 2001 through 2004 and $1,523.81 paid on or about September 27, 2004 to Hidalgo County for taxes for the years 2001 through 2003 minus (-) $1,892.78 refund credited to Debtor's account, all of which is subject to document production from Debtor to verify who directly paid the taxes for these periods (Debtor or Creditor).  Hidalgo ISD/City of Hidalgo tax records carry forward payments but do not go back prior to 2005 regarding specific receipts with respect to check numbers, amounts and payees.

**Request No. 9.**

Admit that on the Addendum, the $6,102.66 amount listed for "Attorneys' fees for prior bankruptcy" reflects, in part, a title search and/or report.

**Response:**

**Deny** that the $6,102.66 listed in the arrearage calculation is not for actual fees or costs expended pursuant to the mortgage note and/or deed of trust. **Admit** that the $6,102.66 consists of $1,290.65 for foreclosure attorney fees and foreclosure costs paid on September 23, 2005 [ $865 attorney fees, $178.61 title search and report, $175 recording fee and $72.04 tax search] plus (+) $150.00 for attorney fees for objection to claim defense (paid January 25, 2007) plus (+) $5,030.98 paid on or about September 27, 2004 to Hidalgo ISD/City of Hidalgo for taxes for the years 2001 through 2004 and $1,523.81 paid on or about September 27, 2004 to Hidalgo County for taxes for the years 2001 through 2003 minus (-) $1,892.78 refund credited to Debtor's account, all of which is subject to document production from Debtor to verify who directly paid the taxes for these periods (Debtor or Creditor). Hidalgo ISD/City of Hidalgo tax records carry forward payments but do not go back prior to 2005 regarding specific receipts with respect to check numbers, amounts and payees.

**Request No. 10.**

Admit that on the Addendum, the $6,102.66 amount listed for "Attorneys' fees for prior bankruptcy" reflects, in part, a recording fee.

**Response:**

**Deny** that the $6,102.66 listed in the arrearage calculation is not for actual fees or costs expended pursuant to the mortgage note and/or deed of trust. **Admit** that the $6,102.66 consists of $1,290.65 for foreclosure attorney fees and foreclosure costs paid on September 23, 2005 [ $865 attorney fees, $178.61 title search and report, $175 recording fee and $72.04 tax search] plus (+) $150.00 for attorney fees for objection to claim defense (paid January 25, 2007) plus (+) $5,030.98 paid on or about September 27, 2004 to Hidalgo ISD/City of Hidalgo for taxes for the years 2001 through 2004 and $1,523.81 paid on or about September 27, 2004 to Hidalgo County for taxes for the years 2001 through 2003 minus (-) $1,892.78 refund credited to Debtor's account, all of which is subject to document production from Debtor to verify who directly paid the taxes for these periods (Debtor or Creditor). Hidalgo ISD/City of Hidalgo tax records carry forward payments but do not go back prior to 2005 regarding specific receipts with respect to check numbers, amounts and payees..

**Request No. 11.**

Admit that on the Addendum, the $6,102.66 amount listed for "Attorneys' fees for prior bankruptcy" reflects, in part, a tax search.

**Response:**

**Deny** that the $6,102.66 listed in the arrearage calculation is not for actual fees or costs expended pursuant to the mortgage note and/or deed of trust. **Admit** that the $6,102.66 consists of $1,290.65 for foreclosure attorney fees and foreclosure costs paid on September 23, 2005 [ $865 attorney fees, $178.61 title search and report, $175 recording fee and $72.04 tax search] plus (+) $150.00 for attorney fees for objection to claim defense (paid January 25, 2007) plus (+) $5,030.98 paid

on or about September 27, 2004 to Hidalgo ISD/City of Hidalgo for taxes for the years 2001 through 2004 and $1,523.81 paid on or about September 27, 2004 to Hidalgo County for taxes for the years 2001 through 2003 minus (-) $1,892.78 refund credited to Debtor's account, all of which is subject to document production from Debtor to verify who directly paid the taxes for these periods (Debtor or Creditor). Hidalgo ISD/City of Hidalgo tax records carry forward payments but do not go back prior to 2005 regarding specific receipts with respect to check numbers, amounts and payees.

**DEFENDANT RESERVES THE RIGHT TO AMEND THESE RESPONSES AS REQUIRED AFTER FUTURE DOCUMENT PRODUCTION AND/OR DEPOSITIONS OF DEBTOR AND/OR CITICORP TRUST BANK FSB FKA TRAVELERS BANK & TRUST.**

Respectfully submitted,

BARRETT DAFFIN FRAPPIER TURNER & ENGEL, LLP

By: /s/H. Gray Burks, IV                    9/24/2008
H. GRAY BURKS, IV
State Bar No. 034178320
1900 St. James Plac,e Suite 500
Houston, TX 77056
Telephone: 713-693-2007
Facsimile: 972-661-7702
ATTORNEY FOR CITICORP TRUST BANK FSB FKA TRAVELERS BANK & TRUST

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Response to Debtors Request for Admissions was

served on September 24, 2008, as follows:

<u>/s /  H. Gray Burks</u>
H. GRAY BURKS, IV
TBA# 03418320


REGULAR FIRST CLASS MAIL, POSTAGE PREPAID:


Debtors:                ANGEL R. ROJAS
                        YANETT M. ROJAS
                        1306 E. CAMELIA AVE.
                        HIDALGO TX  78557

EMAIL:

Debtor's
Attorney:               ELLEN C. STONE
                        4900 N. 10TH ST., SUITE A2
                        MCALLEN TX  78504
                        estone@ellenstonelaw.com