**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **ANGEL ROJAS and YANETT ROJAS,** | § | **CASE NO. 07-70058-M** |
| | § | |
| Debtors. | § | |
| | § | |
| **ANGEL AND YENETT ROJAS,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | **Adv. Proc. No. 09-07003** |
| | § | |
| **CITICORP TRUST BANK, fsb f/k/a** | § | |
| **TRAVELERS BANK & TRUST,** | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

**MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT
AND MEMORANDUM OF LAW IN SUPPORT**

Dated:      March 12, 2009

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

I.    INTRODUCTION....................................................................................................1

II.   PLAINTIFFS' BANKRUPTCY CASES & PROCEDURAL
     BACKGROUND ...............................................................................................2

III.  ARGUMENTS AND AUTHORITIES...............................................................4

    A.    Applicable Legal Standard.......................................................................4
         1.   Dismissal for Lack of Subject Matter Jurisdiction Pursuant to Fed.
             R. Civ. P. 12(b)(1)....................................................................4
         2.   Dismissal for Failure to State a Claim Pursuant to Fed. R. Civ. P.
             12(b)(6). ....................................................................................5

    B.    The Plaintiffs' Class Claims Should Be Dismissed For Lack Of Subject
       Matter Jurisdiction .................................................................................6
         1.   The Claims of the Putative Class Members Would Have No
             Relation to the Bankruptcy Case and Should Be Dismissed. ......6
         2.   The Court Lacks Subject Matter Jurisdiction Over Putative Class
             Members' Claims Because Such Claims Are Subject To The
             Exclusive Jurisdiction Of Courts In Other Districts. ..................8

    C.    Counts I-III Should be Dismissed for Lack of Jurisdiction and Because
       There Are No Claims Stated in Counts I – III .......................................10
         1.   Summary of Counts I – III. .......................................................10
         2.   Counts I-III Fail To State A Cause Of Action Because There Is No
             Private Cause Of Action For Contempt. ...................................10
         3.   Even if A Private Cause of Action for Contempt Existed, Counts I-
             III Fail To State A Cause Of Action Because Plaintiffs Do Not
             Plead Essential Elements for Contempt. ...................................11
         4.   The Court Lacks Jurisdiction To Enter The Type of Relief the
             Plaintiffs Seek in Counts I-III. ................................................12
             a.   Any Monetary Penalty Awarded In This Case Would Be A
                 Criminal Contempt Penalty, and Bankruptcy Courts Lack
                 Criminal Contempt Powers.........................................12
             b.   The Court Can Not Use its Inherent Powers Because There
                 Are Rules Governing the Conduct At Issue.................14
             c.   "Inherent Powers" Do Not Provide Criminal Contempt
                 Jurisdiction...................................................................15
         5.   The Court Can Not Use Contempt to Enforce Another Court's
             Order. ....................................................................................16

    D.    Count IV Should Be Dismissed Because There are No Private Causes of
       Action Under 11 U.S.C. §§ 501 and 502 or Fed. R. Bankr. Pro. 3001.................17

(i)

     **1.**     Congress' Establishment of a Private Right of Action for Section 362 Shows Intent to Exclude Private Rights of Action for Other Code Provisions. ..................................................................................18

     **2.**     There Are No Private Rights of Action for Violations of Sections 501 or 502 or Rule 3001. ...........................................................19

     **3.**     Neither Section 105 Nor The Court's Contempt Power Create a Private Right of Action For Other Sections of The Bankruptcy Code. ......................................................................................21

**E.**     Plaintiffs' Claims For Declaratory and Injunctive Relief Are Unnecessary and Duplicative. ....................................................................22

**F.**     Plaintiffs' Claim for Injunctive Relief is Improper................................22

**G.**     Plaintiffs' Request for Punitive Damages Fails Because Plaintiffs Allege No Claims That Will Support Punitive Damages. ...................................24

**H.**     Plaintiffs Have Failed to State A Claim for Recovery of Attorneys' Fees. ...........24

## TABLE OF AUTHORITIES

### CASES

*Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006)……………………………………………18

*Alexander v. Sandoval,* 532 U.S. 275 (2000) ..................................................... 17, 18

*All Am. of Ashburn, Inc. v. Fox (In re Fox),* 725 F.2d 661 (11th Cir. 1984) ............................ 24

*Barrett v. AVCO Fin. Servs. Mgmt. Co.,* 292 B.R. 1 (D. Mass. 2003) ......................................... 8

*Bass v. Denney* (*In re Bass*), 171 F.3d 1016 (5th Cir. 1999)................................................... 4, 6

*Beaudoin v. Mich. Racing, Inc.*, 30 Fed. Appx. 575 (6th Cir. 2002)…………………………15, 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)............................................................ 5, 6

*Bellefonte Reins. Co. v. Aetna Cas. and Sur. Co*, 590 F. Supp. 187 (S.D. N.Y. 1984)............. 22

*Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439 (1st Cir. 2000) ........................................ 10, 21

*Bessette v. Avco Fin. Servs., Inc.,* 279 B.R. 442 (D.R.I. 2002) ................................................... 9

*Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999)........................................... 22, 23

*Casas v. Am. Airlines, Inc.,* 304 F.3d 517 (5th Cir. 2002)........................................................ 18

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)........................................................................ 14

*Cline v. First Nationwide Mortgage Co. (In re Cline),* 282 B.R. 686 (W.D. Wash. 2002) ...................................................................................................................................... 7

*Cort v. Ash*, 422 U.S. at 78; *see also Acara v. Banks,* 470 F.3d 569 (5th Cir. 2006)............... 18

*Coury v. Prot*, 85 F.3d 244 (5th Cir. 1996) ............................................................................... 4

*D. Patrick, Inc. v. Ford Motor Co.,* F.3d 455 (7th Cir. 1993)…………………………………15

*Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420 (5th Cir. 2001).................... 5

*Desai v. Doctors' Assoc., Inc.*, No. 08--3363-WJM, 2008 WL 4661625, at *4 (D. N.J. Oct. 20, 2008)...………………………………………………………………...15, 16

*Doe v. Hillsboro Independent School District,* 81 F.3d 1395 (5th Cir. 1996)............................ 5

*Elend v. Basham*, 471 F.3d 1199 (11th Cir. 2006) ............................................................ 22, 23

*Federal Elec. Comm'n. v. Furgatch*, 869 F.2d 1256 (9th Cir. 1989) ........................................ 22

*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995)……………………6, 7

*Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215 (3d Cir. 1995) ......................................................................................................... 15

*Fisher v. Fed. Nat'l Mortgage Ass'n,* 151 B.R. 895 (Bankr. N.D. Ill. 1993) ............................ 8

*FTC v. Think Achievement Corp.*, 144 F.Supp2d 1029 (N.D. Ind. 2001)……………………15

*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911).................................................. 13

*Guetling v. Household Fin. Servs., Inc.*, 312 B.R. 697 (M.D. Fla. 2004)………………………8

*Hardy v. United States (In re Hardy)*, 97 F.3d 1384 (11th Cir. 1996) ................................ 12, 13

*Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501 (N.D. Ill. 1998) .................... 18, 19, 21

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998)............. 4

*Hunt v. Anderson*, 794 F. Supp. 1551 (M.D. Ala. 1991)……………………………………22

*In re Costa*, 172 B.R. 954 (Bankr. E.D. Cal. 1994).................................................................. 21

*In re Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990) ........................................................... 13, 14, 16

*In re Rodriguez*, 2007 WL 593582 (W.D. Tex. February 20, 2007) .................................. 13, 14

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 812 (1994)....................... 12, 13

*Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687 (Bankr. N.D. Ill. 1999) ........... 7

*Knupfur v. Lindblade (In re Dyer)*, 322 F.3d 1178 (9th Cir. 2003)..................................... 11, 16

*Koziara v. City of Casselberry*, 392 F.3d 1302 (11th Cir. 2004) ............................................. 22

*Lenior v. GE Capital Corp. (In re Lenior)*, 231 B.R. 662 (Bankr. N.D. Ill. 1999) .................... 7

*Lewis v. Casey*, 518 U.S. 343 (1996)......................................................................................... 5

*Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698 (S.D. Tex. 2002)............................................... 5

*Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 68 B.R. 471 (B.A.P. 9th Cir. 1986).......... 24

*Nat'l Parks Conservation Ass'n v. Norton,* 324 F.3d 1229 (11th Cir. 2003)…………………..22

*Nelson v. Providian Nat'l Bank (In re Nelson)*, 234 B.R. 528 (Bankr. M.D. Fla. 1999) ........... 7

*Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417 (6th Cir. 2000) ........................................ 10, 21

*Placid Ref. Co. v. Terrebone Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.),*
    108 F.3d 609 (5th Cir. 1997) ................................................................................... 11, 12, 24

*Rowan Cos., Inc. v. Griffin,* 876 F.2d 26 (5th Cir. 1989). ........................................................ 22

*Sims v. Capital One Fin. Corp.*, 278 B.R. 457 (Bankr. E.D. Tenn. 2002) ............................... 19

*Sommers v. Vaught (In re Wilson)*, Nos. 05-81190, 06-3078, 2007 WL 1040565,
    (Bankr. S.D. Tex. March 30, 2007) ...................................................................................... 24

*Smith v. Greenhaw Oil and Gas, Inc. (In re Greenhaw Energy, Inc.)*, 359 B.R. 636 (Bankr.
    S.D. Tex. 2007)………………………………………………………………………….9

*Stockman v. Fed. Election Comm'n*, 138 F.3d 144 (5th Cir. 1998)............................................ 4

*Touche Ross & Co. v. Redington,* 442 U.S. 560 (1979) ........................................................... 17

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) ..................................... 18

*United States v. Sutton,* 786 F.2d 1305 (5th Cir. 1986).................................................... 10, 21

*Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) ....................................................... 18

*Walker v. The Cadle Co. (In re Walker)*, 51 F.3d 562 (5th Cir. 1995).................................... 11

*Warth v. Seldin,* 422 U.S. 490 (1975)…………………………………………………………...5

*Wiley v. Mason,* 224 B.R. 58 (Bankr. N.D. Ill. 1998) .............................................................. 8

*Williams v. Sears, Roebuck & Co.,* 244 B.R. 858 (S.D. Ga. 2000) ...................................... 8, 9

 *Wood v. Wood (In re Wood)*, 825 F.2d 90 (5th Cir. 1987)………………………………….6

**STATUTES:**

11 U.S.C. § 105.................................................................................................... 25

11 U.S.C. § 105(a) ......................................................................................... 11, 15

11 U.S.C. § 328(c) ............................................................................................... 15

11 U.S.C. § 362(k) ............................................................................................... 19

11 U.S.C. § 501.................................................................................................... 19

11 U.S.C. § 502.................................................................................................... 19

11 U.S.C. § 502(b)(1) ........................................................................................... 20

11 U.S.C. § 541(a)(7) ............................................................................................. 9

28 U.S.C. § 1334............................................................................................... 4, 9

28 U.S.C. § 1334(a) ............................................................................................... 4

28 U.S.C. § 1334(b) ........................................................................................... 4, 6

28 U.S.C. § 1334(e) ............................................................................................... 9

28 U.S.C. § 1927............................................................................................. 15, 16

**RULES AND REGULATIONS:**

FEDERAL RULE OF CIVIL PROCEDURE 65(d)…………………………………...22

FEDERAL RULE OF BANKRUPTCY PROCEDURE 3001………………………...21

FEDERAL RULE OF BANKRUPTCY PROCEDURE 9011………………………...15

**OTHER AUTHORITIES**

Laura B. Bartell, *Contempt of the Bankruptcy Court – A New Look*,
1996 U. Ill. L. Rev. 1…………………………………………………………………16

**MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

Defendant Citicorp Trust Bank, fsb f/k/a Travelers Bank and Trust ("CTB") respectfully submits this Motion to Dismiss Plaintiffs' Original Complaint (the "Complaint") and Memorandum of Law in Support.  This Motion is filed pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Federal Rule Bankruptcy Procedure 7012(b).

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' ORIGINAL COMPLAINT**

**I.     INTRODUCTION**

Plaintiffs object to CTB's claim filed in their bankruptcy case.  That is the heart of this dispute.  However, Plaintiffs have chosen, rather than simply resolving their objection through the section 502 process, to file this adversary proceeding alleging, *inter alia*, that CTB has somehow violated sections 501 and 502 of the Bankruptcy Code.  Plaintiffs filed their Complaint seeking relief to which they are not, as a matter of law, entitled.  They seek damages under Bankruptcy Code sections that do not give rise to private causes of action.  They seek to invoke the Court's section 105 powers with nothing more than a conclusory allegation that the rules in place to prevent the conduct alleged are not sufficient to the task.  They seek an unnecessary and duplicative declaratory judgment, an impermissible injunction and seek certification of a nationwide class that reaches beyond the Court's jurisdiction.

Plaintiffs ask that the Court stretch itself to grant all of this extraordinary relief on the basis of a single proof of claim.  While the Court is limited, for the purposes of the Motion, to the facts plead in the Complaint, CTB believes that it is nonetheless important that, in light of the nature of the allegations and the level of invective contained in the Complaint, the Court know

that CTB, through the discovery process, has given Plaintiffs the back-up for the amounts contained in its proof of claim.  Moreover, while CTB's claim *description* could have been clearer, the *amount* stated in the proof of claim was correct.  There was no attempt, not even an inadvertent one, to collect funds not owed, and there was no adverse impact on the Plaintiffs' bankruptcy case.  Indeed, in the Complaint, the Plaintiffs admit that CTB has explained the basis for the most of the charges in its claim.  Complaint at 8-9.

Based upon these facts, in this one case, Plaintiffs allege that CTB files false and fraudulent claims in each case in which it has appeared since 1999 and seeks extraordinary relief, including declaratory and injunctive relief and punitive damages, across a nationwide class. Even taking the facts as plead, Plaintiffs simply do not state a claim for the relief sought for themselves, much less a nationwide class, and the Complaint should be dismissed.

## II.      PLAINTIFFS' BANKRUPTCY CASES & PROCEDURAL BACKGROUND

Angel and Yanett Rojas (the "Plaintiffs") filed their petition under Chapter 13, Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court") on February 5, 2007, initiating the case styled and numbered *In re Angel and Yanett Rojas*, No. 07-70058 (the "Bankruptcy Case").  Complaint at 8, ¶ 24.

CTB was the servicer and/or holder of the Plaintiffs' home mortgage loans.  CTB filed a claim in the Bankruptcy Case seeking arrearages in the amount of $29,044.19.  *Id.*, ¶ 25.

On July 11, 2007, Plaintiffs filed a generic objection to CTB's claim in which they stated no specific grounds for their objection (the "Objection").  See Bankruptcy Case Docket No. 38. At Plaintiffs' request, the Court imposed adversary procedures on the contested matter initiated by the Objection.  Bankruptcy Case Docket Nos. 65, 67.  The hearing on the Objection was later

re-set to February 18, 2009 in an Agreed Amended Scheduling Order.  Bankruptcy Case Docket Nos. 97, 99.

On February 4, 2009, pursuant to the Agreed Amended Scheduling Order, CTB filed its Witness and Exhibit List and Proposed Findings of Fact and Conclusions of Law with respect to the Objection.  Bankruptcy Case Docket Nos. 110, 111.

Plaintiffs, seeking to avoid a quick resolution of the central issue in this adversary proceeding, filed a Motion to Abate the hearing on their Objection.  Bankruptcy Case Docket No. 109.  At about the same time, the Plaintiffs sought to have the Court in the adversary proceeding remove the determination of their Objection from the Judge before whom it was pending.  Adv. Pro. Docket No. 8.  The Court denied that attempt.  Adv. Pro. Docket No. 13.

The Objection was resolved in an Agreed Order between CTB and the Plaintiffs.  That order was entered in the Bankruptcy Case on February 18, 2009.  Bankruptcy Case Docket No. 121.  In the Agreed Order, the Court estimated CTB's claim at its full amount and the Plaintiffs agreed to provide for payment of the full amount in their Chapter 13 Plan.  The Agreed Order further provided that the final resolution of the Objection would take place in this adversary proceeding.

On February 5, 2009, while the Objection was pending and discussions regarding the Objection and CTB's claim were ongoing, the Plaintiffs filed the Complaint, initiating this adversary proceeding.  Even while Plaintiffs were filing a Complaint alleging that CTB engaged in "bad faith litigation" over its claim, they were (i) operating under an agreed scheduling order, (ii) avoiding a hearing at which their Objection could be resolved and (iii) working towards an agreed order disposing of the Objection.

3

## III.    ARGUMENTS AND AUTHORITIES

### A.    Applicable Legal Standard

#### 1.    Dismissal for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1).

The Court, like any federal court, is one of limited jurisdiction and thus lacks the power to adjudicate claims unless a statutory basis for jurisdiction exists.  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  Bankruptcy jurisdiction is established by 28 U.S.C. § 1334.  Section 1334(a) confers upon district courts "original and exclusive jurisdiction of all cases under title 11."  28 U.S.C. § 1334(a).  Subsection (b) of section 1334 confers upon district courts "original but not exclusive jurisdiction of all civil proceedings … related to cases under title 11." 28 U.S.C. § 1334(b).  The test for jurisdiction under section 1334(b) consists of two parts:  "the anticipated outcome of the action must both (1) alter the rights, obligations, and choices of action of the debtor, and (2) have an effect on the administration of the estate."  *Bass v. Denney* (*In re Bass*), 171 F.3d 1016, 1022 (5th Cir. 1999).  Both prongs of the test must be met in order for the Court to have subject matter jurisdiction over the Plaintiffs' claims.  *Id.*

The Plaintiffs, as the party invoking federal jurisdiction, bear the burden of demonstrating that jurisdiction is proper.  *Id.* The Plaintiffs must also rebut a presumption against federal subject matter jurisdiction.  *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).  The Court should dismiss a case for lack of subject matter jurisdiction when it determines that it lacks constitutional or statutory power to adjudicate a case, and when it appears certain that the party invoking jurisdiction cannot prove any set of facts to support its position.  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  In ruling on a Rule 12(b)(1) or 7012(b)(1) motion to dismiss, a court may consider: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by

undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002). All undisputed allegations must be accepted as true, but unlike a motion to dismiss under Rule 12(b)(6), a court may also consider disputed facts in the record in order to determine whether it has the power to hear the case before it. *Loofbourrow v. Comm'r*, 208 F. Supp. 2d 698, 703-04 (S.D. Tex. 2002).

## 2. Dismissal for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6).

Dismissal is proper under Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012, when a plaintiff's complaint fails to provide grounds for their entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) (citations omitted). While the Court is required to construe the factual allegations in the Complaint in the light most favorable to the Plaintiffs, *Doe v. Hillsboro Independent School District*, 81 F.3d 1395, 1401 (5th Cir. 1996), a complaint containing mere "labels and conclusions," or a "formulaic recitation of the elements of a cause of action," will not suffice to overcome a motion to dismiss. *Twombly*, 550 U.S. at 555. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (citation and internal quotation marks omitted).

Moreover, the Plaintiffs may not rely on allegations relating to putative members of an uncertified class to survive a motion to dismiss under rule 12(b)(6). *Lewis v. Casey*, 518 U.S. 343, 347 (1996). If Plaintiffs fail to allege personal facts sufficient to maintain their claims, they are not entitled to seek relief on behalf of themselves or the class. *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Plaintiffs' own factual allegations must be enough to raise a right to relief above the speculative level.  Here, even where a cause of action even exists, the Complaint states the basis of each cause of action in a conclusory fashion.  As *Twombly* instructs, "this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court," and the case should be dismissed with prejudice.  550 U.S. at 558 (citations and internal quotation marks omitted).

### B.  The Plaintiffs' Class Claims Should Be Dismissed For Lack Of Subject Matter Jurisdiction

The Plaintiffs assert that the Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.  Complaint at 2, ¶ 5.  Section 1334 grants federal district courts jurisdiction over bankruptcy cases and all civil proceedings (including adversary proceedings) "arising under," "arising in" or "related to" a bankruptcy case commenced under the Bankruptcy Code.  28 U.S.C. § 1334(b).  The Complaint should be dismissed as to all but the named Plaintiffs for lack of subject matter jurisdiction pursuant to section 1334.

### 1.  The Claims of the Putative Class Members Would Have No Relation to the Bankruptcy Case and Should Be Dismissed.

The Court does not have jurisdiction to hear the claims of any putative class members because those claims are unrelated to, and will have no impact on, the Bankruptcy Case.  Thus the minimal jurisdictional requirements under 28 U.S.C. § 1334 are not satisfied as to any of the putative class members.  *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987).  The resolution of any purported claims that any putative class member may have cannot have any conceivable effect on the Plaintiffs' bankruptcy estate.  *Id.*  None of the putative class members' claims (1) alters the "rights, obligations, and choices of action" of the Plaintiffs or (2) has "an effect on the administration of the estate" of the Plaintiffs.  *Bass*, 171 F.3d at 1022, *accord Feld*

6

*v. Zale Corp. (In re Zale Corp.)*, 62 F.3d. 746, 752 (5th Cir. 1995).  Any potential claims owned by any of the putative class members in their respective bankruptcy cases cannot satisfy either prong of the Fifth Circuit's test.  *See In re Zale Corp.*, 62 F.3d at 752.  These purported claims simply do not and cannot "relate to" the Bankruptcy Case, and, as a result, jurisdiction cannot exist under 28 U.S.C. § 1334.  *See In re Wood*, 825 F.2d at 93.  The Bankruptcy Court is not intended to be a "forum[] available for the general resolution of disputes so long as the matter is brought pursuant to some provision of the Bankruptcy Code."  *Cline v. First Nationwide Mortgage Co. (In re Cline),* 282 B.R. 686, 694 (W.D. Wash. 2002).

In this case, the putative class members' claims, which purport to be premised on alleged breaches of the Bankruptcy Code, cannot possibly affect the Bankruptcy Case.  Those claims, to the extent they exist, are either property of the putative debtor-class members, or property of their respective Chapter 13 estates.  The Plaintiffs' creditors are not entitled to and will not receive a penny from any proceeds collected from any such claims.

The clear majority of courts that have addressed this issue agree that bankruptcy courts do not have subject matter jurisdiction over putative class members' claims, even where such claims involve alleged violations of the Bankruptcy Code.  *See, e.g., Knox v. Sunstar Acceptance Corp. (In re Knox),* 237 B.R. 687, 693 (Bankr. N.D. Ill. 1999) (**dismissing a claim for class-wide relief stemming from a creditor's systematic filing of inflated secured claims**); *In re Cline,* 282 B.R. at 696 (the bankruptcy court does not have "arising under" jurisdiction over class claims seeking recovery for violations of the automatic stay and discharge orders); *Nelson v. Providian Nat'l Bank (In re Nelson),* 234 B.R. 528, 534 (Bankr. M.D. Fla. 1999) (holding that the "bankruptcy court has no jurisdiction to entertain a private cause of action for damages by debtors who obtained their discharge in a court other than this one"); *Lenior v. GE Capital Corp.*

(*In re Lenior*), 231 B.R. 662, 667-668 (Bankr. N.D. Ill. 1999) (striking class action claims for damages and injunctive relief under state and federal bankruptcy law where such claims "will not affect the amount of property available for distribution in this Plaintiffs' case, nor will the class claims affect allocation of property among this Plaintiffs' creditors"); *Wiley v. Mason,* 224 B.R. 58, 75 (Bankr. N.D. Ill. 1998) (refusing to certify a class for purposes of pursuing damages claims arising from the use of illegal forms), *rev'd on other grounds,* 237 B.R. 677 (N.D. Ill. 1999); *Fisher v. Fed. Nat'l Mortgage Ass'n,* 151 B.R. 895, 897 (Bankr. N.D. Ill. 1993) (finding no "related to" jurisdiction over class claims of other Chapter 13 debtors where resolution of the claims would have no effect on the amount of property available in the class representative's estate or on the allocation of property to the class representative's creditors); *Guetling v. Household Fin. Servs., Inc.*, 312 B.R. 699, 704 (M.D. Fla. 2004) ("[I]t appears that this Court cannot have jurisdiction over Household's actions concerning debtors involved in bankruptcy proceedings in other federal district courts."); *Barrett v. AVCO Fin. Servs. Mgmt. Co.,* 292 B.R. 1, 8 (D. Mass. 2003) ("The court believes it lacks jurisdiction over the claims of putative class members whose bankruptcies were discharged outside the District of Massachusetts."); *Williams v. Sears, Roebuck & Co.,* 244 B.R. 858, 867 (S.D. Ga. 2000) (dismissing claims for nationwide relief for damages based on alleged violations of sections 362 and 524 as to class members with cases pending outside of the Southern District of Georgia).  Accordingly, this Court lacks subject matter jurisdiction over the putative class members' claims.

> **2.    The Court Lacks Subject Matter Jurisdiction Over Putative Class Members' Claims Because Such Claims Are Subject To The Exclusive Jurisdiction Of Courts In Other Districts.**

Independent of the subject matter jurisdiction defects described above, 28 U.S.C. § 1334(e) prohibits the Court from exercising *in rem* jurisdiction over the putative class members' claims for damages unless the putative class members filed their bankruptcy petitions

in the Southern District of Texas.  Section 1334(e) provides that "the district court in which a case under title 11 is commenced or is pending shall have *exclusive* jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."  28 U.S.C. § 1334(e) (emphasis added).  To the extent they are based on post-petition, pre-confirmation conduct, causes of action for damages are property of a debtor's estate. *See Smith v. Greenhaw Oil and Gas, Inc. (In re Greenhaw Energy, Inc.)*, 359 B.R. 636, 642 (Bankr. S.D. Tex. 2007) (post-petition wrongful foreclosure action held to be property of the estate); *see also* 11 U.S.C. § 541(a)(7).  Thus, for putative class members whose bankruptcy cases were filed in other districts, the courts in which those cases were filed have exclusive jurisdiction over the class members' respective claims.

The purpose of section 1334(e) is clear – "to ensure that only one court administers the bankruptcy estate of a debtor."  *Williams*, 244 B.R. at 866.  Otherwise, the orderly distribution of a debtor's assets to holders of claims against the estate, the primary purpose of the Bankruptcy Code, would be frustrated.  *Id.*

Plaintiffs seek to avoid the limitations of section 1334(e) by invoking Federal Rule of Civil Procedure 23 (authorizing class actions) in an attempt to institute a nationwide class action. Plaintiffs may not utilize a procedural rule such as Rule 23 to circumvent the clear language of section 1334(e).  *See Id.* at 866; *see also Bessette v. Avco Fin. Servs., Inc.,* 279 B.R. 442, 449 (D. R.I. 2002) ("If the petition for bankruptcy is not filed in Rhode Island, the estate is not located here, and the Court has no jurisdiction").  Because the plain language of section 1334(e) precludes this Court from exercising jurisdiction over the putative class members' claims, such claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

C.   **Counts I-III Should be Dismissed for Lack of Jurisdiction and Because There Are No Claims Stated in Counts I – III**

1.   **Summary of Counts I – III.**

The Counts are styled as "Requests for Relief" rather than causes of action, which is telling in and of itself.  Counts I through III of the Complaint are substantially similar to one another to the point where they are really a single running claim.  They are entitled (I) "Relief for False, Materially Inaccurate and/or Misleading Representations of Fact"; (II) "Relief for Repeated Failure to Ensure the Accuracy of Pleadings and Accounts"; and (III) "Relief for Contempt, Abuse of Process, and Relief Pursuant to the Court's Inherent Powers and 11 U.S.C. § 105(a)."  Plaintiffs do not describe the actual claims or causes of action upon which they propose that the Court base the requested relief.  All three counts allege that CTB filed or caused to be filed an inaccurate proof of claim, acted in bad faith in defending its claim and thus "abused the bankruptcy process" to the point where (the Plaintiffs summarily and without support allege) "the rules are not up to the task of adequately sanctioning Citicorp for its conduct."  Complaint, ¶ 52.

2.   **Counts I-III Fail To State A Cause Of Action Because There Is No Private Cause Of Action For Contempt.**

Plaintiffs fail to state a cause of action in Counts I-III because there is no private cause of action for contempt.  The United States Circuit Courts of Appeal considering the issue have uniformly held that section 105 does not permit courts to simply create causes of action where none otherwise exist.  *See, e.g., United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir. 1986); *Bessette,* 230 F.3d at 444-45; *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 423 (6th Cir. 2000).

The Fifth Circuit has held that bankruptcy judges may award sanctions for contempt under section 105 in some circumstances; however, the Fifth Circuit has not recognized civil contempt as a private cause of action and has distinguished contempt proceedings from judicially-created causes of

10

action.  In *Walker v. The Cadle Co. (In re Walker)*, 51 F.3d 562, 567-68, n.2 (5th Cir. 1995), the plaintiff attempted to establish a private cause of action for violations of the stay, and cited a number of cases from other jurisdictions that had permitted damages for civil contempt.  The Fifth Circuit rejected that argument, noting the difference between civil contempt proceedings and judicially-created causes of action.  *Id.* ("the debtors sought damages through civil contempt proceedings, *not through a judicially created cause of action.*") (emphasis added).  This is not an attempt by the individual putative class plaintiffs to file individual petitions for sanctions under the Court's contempt power.  Rather, the Plaintiffs have attempted to bring a private cause of action on behalf of a class.  The Fifth Circuit has recognized that these are two different proceedings.  Because there is no private cause of action for contempt, Counts I-III should be dismissed.

> **3.    Even if A Private Cause of Action for Contempt Existed, Counts I-III Fail To State A Cause Of Action Because Plaintiffs Do Not Plead Essential Elements for Contempt.**

Even if a private cause of action existed, Plaintiffs do not state a claim for contempt.  Plaintiffs ask the Court in Counts I - III to find CTB in contempt of Bankruptcy Code provisions and Bankruptcy Rules (and to use section 105 to remedy that alleged contempt).  But the gravamen of contempt is proof "that the contemnors violated a specific and definite order of the court."  *Knupfur v. Lindblade (In re Dyer),* 322 F.3d 1178, 1191 (9th Cir. 2003) (citation omitted); *see also Placid Ref. Co. v. Terrebone Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.),* 108 F.3d 609, 612 (5th Cir. 1997).  It does not state a claim for contempt to allege that the defendant violated a law or a court rule.  *In re Dyer*, 322 F.3d at 1190 (the contempt power in section 105 "is simply not a vehicle for enforcing other provisions of the Bankruptcy Code.").

Moreover, even if contempt power could be used to enforce Bankruptcy Code provisions, in Counts I-III, the Plaintiffs allege no violation of any specific provision of the Bankruptcy Code.  The Plaintiffs further do not allege the existence of an order, much less that CTB was in violation of an

order.  If there were a private cause of action available for contempt, it would require at a minimum

that the Plaintiffs plead both the existence and violation of an order.  Neither of these elements is

plead.  Accordingly, the Plaintiffs' claims for contempt contained in Counts I-III of the Complaint

must be dismissed for this additional reason.

> **4.     The Court Lacks Jurisdiction To Enter The Type of Relief the Plaintiffs Seek in Counts I-III.**

Because the Plaintiffs have not been damaged, the sanctions they seek could only be

awarded for criminal contempt.  The Court lacks criminal contempt powers.

> **a.     Any Monetary Penalty Awarded In This Case Would Be A Criminal Contempt Penalty, and Bankruptcy Courts Lack Criminal Contempt Powers.**

Contempt sanctions can be classified as either civil or criminal.  Civil contempt sanctions

coerce compliance with a court order.   As a result, a party can avoid sanctions through

obedience.  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

Criminal contempt sanctions are punitive, aimed at vindicating the authority of the court.  *Id.* at

828; *see also In re Terrebonne*, 108 F.3d at 612.  Because classification of a contempt sanction

requires an examination of the "character and purpose" of the sanction, a court must look to the

"character of the relief" to decide whether a sanction is criminal or civil.  *Bagwell*, 512 U.S. at

827.  In the context of fines, a fine will be considered a civil sanction if a party can avoid the fine

through compliance or if the fine is designed to compensate a party for the contemnor's conduct.

*Id.* at 829.  However, a flat fine, "totaling even as little as $50 is criminal if the contemnor has no

subsequent opportunity to reduce or avoid the fine through compliance."  *Id.* at 829.

Bankruptcy courts lack the power to hold parties in criminal contempt.  *Hardy v. United*

*States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996) (noting that bankruptcy courts under

section 105 "may only impose sanctions for contempt that are coercive and not punitive"); *In re*

*Hipp, Inc.*, 895 F.2d 1503 (5th Cir. 1990) (finding no constitutional, statutory, or inherent authority for a bankruptcy court to exercise criminal contempt powers).  If a party seeks "money damages in the form of a fixed, non-compensatory fine, then the court may not order such monetary damages, as they are punitive and not coercive." *Hardy*, 97 F.3d at 1390.

The United States District Court for the Western District of Texas addressed the civil and criminal contempt distinction in deciding an appeal of contempt sanctions from a bankruptcy court. *See In re Rodriguez*, No. 05-55166-LMC, 2007 WL 593582 (W.D. Tex. February 20, 2007).  In *Rodriguez*, a debt counselor had repeatedly violated bankruptcy court orders and injunctions over the course of several proceedings. *Id.* at 2-5.  As a result of these violations, the United States Trustee filed a motion seeking an order requiring the counselor to appear and show cause why she should not be held in contempt. *Id.* at 1.  The bankruptcy judge characterized the proceeding as a civil contempt proceeding and imposed sanctions consisting of $15,000 for three prior violations of court orders and $6,000 to compensate the debtor. *Id.* at 4-5.  On appeal, the district court held that bankruptcy courts may conduct civil contempt proceedings, but lack the authority to hold criminal contempt proceedings. *Id.* at 7-8.  Applying distinctions between civil and criminal contempt outlined by the United States Supreme Court, the district court determined that the $15,000 sanction was an inappropriate criminal contempt sanction because no level of compliance by the counselor would have avoided the penalty; rather, the penalty punished her for prior conduct. *Id.* at 11-14 (citing *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911) and *Bagwell*, 512 U.S. at 821).  Conversely, the $6,000 sanction fairly compensated the debtor for losses suffered due to the counselor's conduct, which is an appropriate goal of civil contempt. *Id.* at 15.

13

Under the facts alleged, the Plaintiffs, as a matter of law, cannot pursue civil contempt claims in this case because any imposition of "monetary sanctions" would not compensate the Plaintiffs or coerce compliance with a court order. *See Bagwell*, 512 U.S. at 827. The Plaintiffs have suffered no damages associated with CTB's claim – indeed – they could not, because CTB's claim stated an accurate amount (and if it were incorrect, such an issue could be resolved through the section 502 objection process).

The Court should dismiss the Complaint because this relief could only be awarded, if at all, by a district court. *See Hipp*, 895 F.2d at 1505; *Rodriguez*, 2007 WL at 16.

### b. The Court Can Not Use its Inherent Powers Because There Are Rules Governing the Conduct At Issue.

The Court can not invoke its inherent powers in this case. Although the Supreme Court permits courts to use their inherent powers under 11 U.S.C. § 105 to "police the conduct of the attorneys and parties who appear before it," such use is permitted only in circumstances where the Federal Rules of Civil Procedure or other applicable rules and statutes are "not up to the task," i.e., where the conduct at issue is not covered by one of the sanctioning mechanisms provided under the Rules. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). The use of inherent powers is also permitted where the conduct governed by the applicable rules is "intertwined" with conduct that is not covered by the rules. *Id.* at 51. An incorrect proof of claim can be addressed in the objection process provided under section 502. An inaccurate pleading can, if appropriate, be addressed using Rule 9011 (and following the proper procedures). Because these provisions are sufficient to the task of addressing the alleged conduct set forth in the Complaint, the Court can not use its inherent powers to address such alleged conduct.

c.     "Inherent Powers" Do Not Provide Criminal Contempt
       Jurisdiction.

Even if the Court were to invoke its inherent powers, the Court's inherent powers do not

extend jurisdiction to award punitive sanctions.   While inherent powers may provide an

alternative path to enter relief beyond 11 U.S.C. § 105(a), 28 U.S.C. § 1927,[1] or Rule 9011, they

do not provide bankruptcy courts jurisdiction to enter punitive relief where it is otherwise

lacking.

The Third Circuit addressed a bankruptcy court's inherent power to sanction attorneys in

*Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215 (3d Cir.

1995).  There, the court upheld a bankruptcy court order denying the fee application of a debtor's

law firm that had acted in bad faith by filing a lawsuit against the unsecured creditors'

committee.  The court cited the Supreme Court's *Chambers* decision for the proposition that

federal courts had the "implied and incidental powers…to discipline attorneys who appear before

it," and that these powers served the dual purpose of "vindicat[ing] judicial authority without

resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing

party whole for expenses caused by his opponent's obstinacy."  *Id*. at 1224 (internal citations

omitted).  Notably, the cited passage from *Chambers* validated the use of these inherent powers

to "make[e] the prevailing party whole," i.e. to compensate – an appropriate use of civil

sanctions.

Another court also held the bankruptcy courts have the inherent power to sanction "to

deter and provide compensation for a broad range of improper litigation tactics." *In re Dyer*, 322

---

[1]  Section 1927 permits federal courts to impose upon "attorney[s] or other person[s] admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings thereof unreasonably or vexatiously … the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Neither section 1927 nor Bankruptcy Rule 9011 has been invoked as a basis for sanctions in this proceeding.

15

F.3d at 1196.  The court in *Dyer* separately analyzed a bankruptcy court's ability to enter sanctions either through civil or criminal contempt or through inherent powers.  *In re Dyer*, 322 F.3d at 1195-97.  After determining 11 U.S.C. § 105(a) only provided civil contempt powers, the Ninth Circuit turned to "inherent powers" and held:  "The bankruptcy court's inherent sanction authority, like its civil contempt authority, does not authorize significant punitive damages, so the punitive sanctions cannot stand, whatever [the] degree of culpability."  *Id.* at 1197; *see also, Hipp*, 895 F.2d at 1512-13 (discussing inherent powers as subject to the criminal and civil contempt distinction); Laura B. Bartell, *Contempt of the Bankruptcy Court – A New Look*, 1996 U. Ill. L. Rev. 1, 22 (1996) (noting that "all courts agree that bankruptcy courts lack inherent criminal contempt power").

### 5.    The Court Can Not Use Contempt to Enforce Another Court's Order.

Courts can not use contempt to enforce another court's order.  *See Desai v. Doctors' Assoc., Inc.*, No. 08-3363-WJM, 2008 WL 4661625, at * 4 (D. N.J. Oct. 20, 2008) (denying motion to hold the defendant in contempt of a state court injunction because such a motion must be brought in the state court issuing the injunction); *Beaudoin v. Mich. Racing, Inc.*, 30 Fed. Appx. 575, 576 (6th Cir. 2002) (dismissing plaintiff's request to have defendants held in contempt of a state court order because the appropriate recourse was to pursue the matter in the state court).  "Civil contempt proceedings are part of the action from which they stem, and their purpose is to secure compliance with a prior court order."  *FTC v. Think Achievement Corp.*, 144 F.Supp.2d 1029, 1033 (N.D. Ind. 2001) (emphasis added) (citing *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993)).  In other words, the Court can only hold CTB in civil contempt in order to coerce compliance with its own orders and/or to compensate Plaintiffs for a loss sustained from disobedience of such orders."  *Id.*

The Plaintiffs do not allege that the Court has issued any order in this adversary proceeding which could support a contempt finding. The only orders that CTB could have violated with respect to its claim are Judge Schmidt's orders entered in the Bankruptcy Case. This Court can not use contempt to enforce another court's orders. *See Desai*, 2008 WL 4661625, at * 4; *Beaudoin*, 30 Fed. Appx. at 576.

Only Judge Schmidt can enforce an order he has entered; accordingly, the Court does not have jurisdiction to consider Plaintiffs' alleged contempt claims. *See Desai*, 2008 WL 4661625, at * 4; *Beaudoin*, 30 Fed. Appx. at 576 (only the court that issues an order can coerce compliance with that order through civil contempt). Similarly, the Plaintiffs' alleged class claims must also fail because the Court cannot use contempt to enforce any alleged violations of the orders of other courts. Accordingly, the Court does not have jurisdiction to consider Plaintiffs' alleged contempt claims and Counts I - III must be dismissed.

**D.      Count IV Should Be Dismissed Because There are No Private Causes of Action Under 11 U.S.C. §§ 501 and 502 or Fed. R. Bankr. Pro. 3001.**

In Count IV, Plaintiffs assert claims allegedly arising under sections 501 and 502 of the Bankruptcy Code and Rule 3001 of the Federal Rules of Bankruptcy Procedure. These claims must be dismissed because debtors have no private right of action to sue for damages or other relief under those sections of the Bankruptcy Code and Rules. Private rights of action, as well as private remedies under federal statutes, can only be created by Congress. *Alexander v. Sandoval,* 532 U.S. 275, 286 (2000). In determining whether Congress intended to create a private right or remedy, a court first looks to the language of the statute itself. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568 (1979). When there is no evidence of congressional intent to create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter." *Alexander,* 532 U.S. at 286-87.

17

In *Cort v. Ash*, the Supreme Court established a four-part test for determining whether a statute creates a private right of action:  whether (1) plaintiffs are one of the class for whose benefit the statute was enacted; (2) there is any indication of legislative intent to create a private right of action; (3) such a right of action is consistent with the underlying purposes of the legislative scheme; and (4) the cause of action is one that is traditionally relegated to state law. *Cort v Ash*, 422 U.S. 66, 78 (1975); *see also Acara v. Banks,* 470 F.3d 569, 571 n.1 (5th Cir. 2006).  Under this test, not all factors are equally weighted.  *Holloway v. Household Auto. Fin. Corp.*, 227 B.R. 501, 505 (N.D. Ill. 1998).  "The central inquiry is whether Congress intended to create a private right of action."  *Id.* (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979)); *see also Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1103 (1991).

None of the Bankruptcy Code provisions that Plaintiffs invoke pass the *Cort* test.  To the contrary, a reasoned analysis of those provisions shows clearly that: (a) there is no evidence of Congressional intent to create private rights of action for violations of these provisions; indeed, Congress' silence is persuasive evidence that there was no such intent; (b) the recognition of private rights of actions would not be consistent with the underlying purposes of these provisions; and (c) these provisions are either administrative or procedural provisions for which no private damages claim is appropriate.

1.     **Congress' Establishment of a Private Right of Action for Section 362 Shows Intent to Exclude Private Rights of Action for Other Code Provisions.**

The structure of the Bankruptcy Code itself provides best evidence that Congress did not intend to create private rights of action to enforce Bankruptcy Code sections 501 or 502 or Rule 3001.  It is a longstanding principle of statutory interpretation that a statutory regime should be examined as a whole, and that "the express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  *Casas v. Am. Airlines, Inc.,* 304 F.3d

517, 523 (5th Cir. 2002) (quoting *Sandoval,* 532 U.S. at 291).  In drafting and implementing the Bankruptcy Code, Congress explicitly provided private rights of action where it desired them, including a private right of action for violations of the automatic stay in 11 U.S.C. § 362(k). Congress, however, did not include any private rights of action in the Bankruptcy Code with respect to sections 501 or 502 or Rule 3001.  The absence of an explicit private right and remedy for these provisions shows that Congress did not intend to create them.  Thus, the second and third prongs of the *Cort* test cannot be satisfied.

Pursuant to *Cort*, *Casas*, and *Sandoval,* the Court should dismiss Plaintiffs' Count IV claims on this ground alone.  Nonetheless, an examination of each code section at issue provides additional support for dismissal.

> **2.  There Are No Private Rights of Action for Violations of Sections 501 or 502 or Rule 3001.**

There are no private rights of action for violations of sections 501 or 502 or Rule 3001. Section 501, entitled "Filing of proofs of claims or interests," is an administrative statute that identifies the persons who may file a proof of claim or interest in a bankruptcy case.  11 U.S.C. § 501.  Section 502, entitled "Allowance of claims or interests" is also an administrative provision that describes the process pursuant to which claims filed pursuant to a proof of claim are allowed or disallowed.  11 U.S.C. § 502.  An application of the *Cort* factors shows that there are no implied rights of action that can be asserted by the Plaintiffs.  There is no indication of Congressional intent to create private rights of action.  Nothing in the legislative histories of sections 501 or 502 indicates that Congress intended to create rights of action assertable against creditors for filing proofs of claim that are either undocumented or claim a right to payment for sums not owed by the debtor.  *See Sims v. Capital One Fin. Corp.*, 278 B.R. 457, 466 (Bankr. E.D. Tenn. 2002) (finding that there is no indication in the legislative history of section 502 that

Congress intended to create a private right of action).  Congress' failure to expressly provide a private right of action in either provision further indicates the lack of legislative intent to create private rights of action."  *Holloway*, 227 B.R. at 505 ("[w]hen Congress wishes to provide a private damage remedy, it knows how to do so … the omission of a similar private remedy … indicates a lack of legislative intent to create a private right of action").  Accordingly, it is without question that Congress did not intend to create private rights of action for "violations" of sections 501 and 502.

Moreover, sections 501 and 502 are administrative statutes that make up part of Congress' legislative scheme regarding distributions and creditors' rights and obligations under the Bankruptcy Code.  These statutes do nothing more than set out which claims can be allowed and which claims will be disallowed.  Depending on the particular bankruptcy chapter, allowed claims provide creditors with certain rights, including, *inter alia*, the right to have such claims satisfied from either the property of a debtor's estate or as provided under a plan of reorganization.  The penalty Congress set for a creditor's failure to comply with sections 501 and 502 is the disallowance of the creditor's claim.  Creditors whose claims are disallowed cannot participate in a debtor's bankruptcy case and are not entitled to have their claims satisfied in the debtor's bankruptcy proceeding.

Implying private rights of action would be inconsistent with Congress' underlying legislative scheme.  The Bankruptcy Code clearly sets out the rights and consequences of having claims allowed and/or disallowed.  In the context of this case, section 502 establishes the remedy for deficient proofs of claim – disallowance.  11 U.S.C. §§ 502(b)(1) (providing that claims will be disallowed when they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law …").  Creditors holding disallowed claims will suffer the

penalty of being unable to recover from the debtor on account of their claims.  Implying private causes of action, in addition to claim disallowance, for "violations" of sections 501 and 502 exceeds Congress' express remedy and thus conflicts with Congress' legislative scheme. *Holloway*, 227 B.R. at 505 (citing *In re Costa*, 172 B.R. 954, 966 (Bankr. E.D. Cal. 1994) (holding that implying a private right of action is inconsistent with legislative intent when the legislative scheme already provides a remedy)).  Accordingly, sections 501 and 502 do not provide an implied private right of action that the Plaintiffs can assert in this case.

Likewise, Rule 3001, titled "Proof of Claim," is an administrative rule that sets out the form and information to be included in a proof of claim.  However, unlike sections 501 and 502, Rule 3001 is not a statute enacted by Congress, but a rule of procedure promulgated by the federal courts.  Applying the *Cort* analysis to Rule 3001 (not its usual application), the above analysis applicable to section 501 and 502 applies with equal force to Rule 3001 and Rule 3001 does not establish a private right of action.  Accordingly, Count IV should be dismissed.

> **3.    Neither Section 105 Nor The Court's Contempt Power Create a Private Right of Action For Other Sections of The Bankruptcy Code.**

Because no private rights of action exist under sections 501 and 502 of the Bankruptcy Code or under Rule 3001, Plaintiffs ask the Court to craft a private right of action through section 105 – the provision of the Bankruptcy Code that confers equitable powers on the Court.  However, the United States Circuit Courts of Appeal have uniformly held that section 105 does not permit courts to simply create causes of action where none otherwise exist.  *See, e.g., Sutton,* 786 F.2d at 1308; *Bessette*, 230 F.3d at 444-45; *Pertuso,* 233 F.3d at 423.  Accordingly, Plaintiffs' appeal to section 105 will not save Count IV from dismissal.

**E.     Plaintiffs' Claims For Declaratory and Injunctive Relief Are Unnecessary and Duplicative.**

Plaintiffs' lack of viable claims cannot be remedied by their pro forma claims for declaratory relief (*see* Complaint at 16, Count VI, ¶¶ 58-59), a preliminary injunction, and a permanent injunction (*Id.*, Count VII, ¶¶ 60-62). Each of these purported claims is just a form of relief that is dependent on the success of Plaintiffs' other alleged causes of action. Because Plaintiffs have not stated claims for their "substantive" counts, then, as a matter of law, they cannot proceed with their claims for declaratory and/or injunctive relief.

**F.     Plaintiffs' Claim for Injunctive Relief is Improper.**

Plaintiffs' claim for injunctive relief also fails on a number of other grounds. First, an injunction against future conduct requires proof of a "real and immediate threat" of future injury accompanied by "continuing, present adverse effects." *Elend v. Basham*, 471 F.3d 1199, 1207-08 (11th Cir. 2006); *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quoting *Nat'l Parks Conservation Ass'n v. Norton,* 324 F.3d 1229, 1241 (11th Cir. 2003)). Without "continuing, present adverse effects," the injury remains "wholly inchoate," and the "injury" requirement of standing is not satisfied. *Elend*, 471 F.3d at 1207, 1209; *see*, *e.g.*, *Bellefonte Reins. Co. v. Aetna Cas. and Sur. Co*, 590 F. Supp. 187 (S.D.N.Y. 1984). No justiciable controversy exists when it is based upon the possibility of a factual situation that may never develop. *See, e.g., Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28-29 (5th Cir. 1989); *Hunt v. Anderson*, 794 F. Supp. 1551 (M.D. Ala. 1991).

Second, the requested injunctive relief is improper and unnecessary if it merely amounts to an injunction to obey the law. *Elend*, 471 F.3d at 1209; *Burton v. City of Belle Glade*, 178 F.3d 1175, 1200-01 (11th Cir. 1999) (finding that the district court correctly refused to issue requested injunction ordering defendant city not to discriminate as such injunction would amount

to an order to "obey the law").  Finally, a request for an injunction requires specificity and clear guidance.  *See Burton*, 178 F.3d at 1200 (rejecting requested injunctive relief on basis that injunction must contain an operative command capable of enforcement); *Federal Elec. Comm'n. v. Furgatch*, 869 F.2d 1256, 1263-64 (9th Cir. 1989); *see also* Fed. R. Civ. P. 65(d).

Plaintiffs' claim for injunctive relief fails on all of these grounds.  Plaintiffs have failed to allege facts showing an imminent threat of future injury or any continuing, current injury warranting any sort of injunction.  *See Elend*, 471 F.3d at 1207-08.  Rather, Plaintiffs allege that "Citibank will, in all likelihood continue to violate federal law…"  (Complaint at 16, ¶ 62).  The allegation fails to suggest an imminent threat of future harm but is merely a speculative, conclusory assertion.  The allegedly offending conduct occurred in the past, leaving no current conduct warranting restraint.  Instead, the claim for relief resembles the claim in *Elend* as the Plaintiffs allege past harm and then offer the speculation that CTB will repeat its alleged conduct in future cases.  *See Elend*, 471 F.3d at 1207-08.

Plaintiffs' failure to allege facts demonstrating future injury spills into the next gap in the Plaintiffs' argument for injunctive relief, as Plaintiffs request that the Court enjoin CTB from "further violations of the law."  *See Elend*, 471 F.3d at 1209 (injunctions to obey the law are "impermissible").   Any hypothetical future injury requiring injunctive restraint is already addressed by the existing rules and procedures governing bankruptcy, and, in light of the authority already in place to prevent this alleged conduct, the injunction Plaintiffs seek would be an unnecessarily duplicative decree.  Moreover, the claim for injunctive relief lacks any degree of specificity and fails to provide any real guidance for CTB's future conduct.  *See Burton*, 178 F.3d at 1200.

For all of these reasons, Plaintiffs' Count VII request for injunctive relief must be dismissed.

### G. Plaintiffs' Request for Punitive Damages Fails Because Plaintiffs Allege No Claims That Will Support Punitive Damages.

Plaintiffs' request for punitive damages should be dismissed because Plaintiffs do not allege a single viable substantive cause of action. Even if there is some merit to their Objection to CTB's claim, filing an objectionable claim is not grounds for punitive damages.

### H. Plaintiffs Have Failed to State A Claim for Recovery of Attorneys' Fees.

Count IX of the Complaint purports to state a claim for attorneys' fees. Plaintiffs state that they are entitled to such fees "pursuant to 11 U.S.C. §§ 105 and the Court's inherent contempt powers." Neither of these provide a basis for attorneys' fees here. Section 105 does not upset the American Rule that parties bear their own legal fees. *See Sommers v. Vaught (In re Wilson)*, Nos. 05-81190, 06-3078, 2007 WL 1040565, **4-5 (Bankr. S.D. Tex. March 30, 2007); *All Am. of Ashburn, Inc. v. Fox (In re Fox)*, 725 F.2d 661, 663 (11th Cir. 1984). Even if section 105 would permit fees to be awarded, there is no claim under that statute. While section 105 affords the Court civil contempt power for willful abuse of the judicial process – such as attorney misconduct or violation of a court order – actions for contempt are not available for alleged violations of the Bankruptcy Code. *See, e.g., Terrebone*, 108 F.3d at 612 (stating that the purpose of a civil contempt proceeding is to "coerce compliance with a court order or to compensate another party for the contemnor's violation"); *Mortgage Mart, Inc. v. Rechnitzer (In re Chisum)*, 68 B.R. 471, 473-74 (B.A.P. 9th Cir. 1986). Because they have stated no viable substantive claims, and because section 105 does not change the American Rule, Plaintiffs' Count IX request for attorneys' fees must be dismissed.

## CONCLUSION

Plaintiffs have taken a simple claim objection and attempted to parley it into a nationwide class action seeking multiple forms of extraordinary relief.  Plaintiffs are not entitled to the relief sought, both because such relief is not available and because they have not alleged a single viable cause of action.  The Court should dismiss every part of the Complaint except for the objection to CTB's claim.  CTB's claim is comprised of amounts properly due and owing from Plaintiffs and believes that its claim will survive the objection, but acknowledges that Plaintiffs are entitled to seek to reduce the claim under section 502.  This is very different from having a private cause of action under sections 501 and 502 and Rule 3001.  No such claims exist, nor does a private right of action for contempt.  Because they do not state a single viable substantive claim, CTB requests that the Court dismiss Plaintiffs' Complaint.

Respectfully submitted,

Dated:  March 13, 2009

DEFENDANT CITICORP TRUST BANK, fsb

By its attorneys,

/s/ Doug Skierski
Edwin R. DeYoung
State Bar No. 05673000
Federal I.D. No. 18828
Roger Cowie
State Bar No. 00783886
Federal I.D. No 18886
Doug Skierski
State Bar No. 24008046
Federal I.D. No 23666
Locke Lord Bissell & Liddell LLP
2200 Ross Ave., Suite 2200
Dallas, TX 75201
Telephone: (214) 740-8000
Facsimile: (214) 740-8800

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this **Motion to Dismiss Plaintiffs' Original Complaint and Memorandum of Law in Support** was served electronically on **Karen L. Kellett,** counsel for the Plaintiffs, on March 13, 2009 pursuant to Local Rule CV 5.1.

/s/ Doug Skierski

Doug Skierski