**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 07-70058-M** |
| | § | |
| **ANGEL ROJAS and YANETT ROJAS** | § | **CHAPTER 13** |
| | § | |
| **DEBTORS.** | § | |
| | § | |
| **ANGEL AND YANETT ROJAS** | § | |
| | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITICORP TRUST BANK,** | § | |
| **fsb f/k/a TRAVELERS BANK & TRUST;** | § | |
| | § | **ADVERSARY NO. 09-07003** |
| | § | |
| **Defendant** | § | |
| | § | |
| | § | |
| | § | |
| | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

    COME NOW Angel and Yanett Rojas, and file this response to Defendant's motion to

dismiss, and as cause would show as follows:

## I.  INTRODUCTION

    Our discussion is limited to whether Countrywide's conduct in this
    case constitutes a violation of the automatic stay under *Section 362.*
    *Of course, the bankruptcy court has other mechanisms to impose*
    *sanctions on parties who may attempt to abuse the procedural*
    *mechanisms within the bankruptcy court. See 11 U.S.C. § 105; Fed.*
    *R. Bankr. P. 9001.*

*Campbell v. Countrywide Home Loans, Inc.*, 545 F. 3d 348, 356, n. 1 (5th Cir. 2008). (emphasis added).  *See also, In re Marrama*, 549 U.S. 365 (2007).

The Fifth Circuit Court of Appeals wrote these words just six months ago, in a case in which it held that only noting a payment increase on a proof of claim, without more, did not constitute a stay violation.  *See id.*  The Court, however, was very clear to limit its ruling.  In *Campbell*, the Court must have knew that something was amiss in the proof-of-claim world.  Why else the limitation of the opinion and the edict?

Plaintiffs cannot understand why Citicorp Trust Bank ("Citi") choose not to bring the *Campbell* case to the Court's attention in its motion, in which, for 25 pages, Citi insists that the bankruptcy court cannot impose sanctions on Citi for its abuse of the procedural mechanisms of the bankruptcy court.  Citi could not have overlooked that *Campbell*, as Countrywide's lead counsel there, Locke Lord Bissell & Liddell, is Citi's lead counsel here.  *See* Def's Motion, p. 25.  Indeed, a review of Citi's Table of Authorities reveals that Citi has chosen not to cite any relevant cases post *Campbell* or *Marrama* or, for that matter, this Court's opinion in *Rodriguez*.

This case is not primarily about an objection to a claim.  The case is about Citi's persistent abuses of the Code that, in fact, turn the Code on its head and threaten to decimate the protections that the Code intended for consumer debtors and their creditors.

This case is about Citi (among numerous other mortgage lenders) ignoring clear bankruptcy requirements to increase profits, then arguing that the bankruptcy court simply has no power whatsoever to do anything about it.

Even before the great financial meltdown, no one captured what this case is about better than Katherin Porter in her landmark treatise, *Misbehavior and Mistake in Bankruptcy Mortgage Claims:*

**PLAINTIFFS' RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 2**

... For many families, the greatest fear is losing their home to foreclosure. A home is not only most families' largest asset, but also a tangible marker of their financial aspirations and middle class statues. A threatened or pending foreclosure can signal the end of a family's ability to struggle against financial collapse and an unrecoverable tumble down the socioeconomic ladder.

Bankruptcy offers these families one last chance to save their homes. A bankruptcy filing halts a pending foreclosure and gives families the right under federal law to cure any defaults on a mortgage loans over a period of years. The bankruptcy system offers refuge from the vagaries of state law foreclosure, substituting the protections of a federal court system and uniform legal rules to ensure that these families get one final opportunity to preserve their homes.

But this protection comes at a cost. Mortgage companies file proofs of claim with the bankruptcy court for the amount of the mortgage debt. In turn, bankrupt debtors must pay these claims or lose their homes. The balance between the family and the mortgage lender is clearly spelled out in the bankruptcy laws, specifying the manner in which the amount owed is to be established and obligating both the homeowner and the mortgage company to disclosure information accurately.

This claims process is well-established and, until now, uncontroversial. Homeowner--backed up by lawyers, policy makers, and news reporters–assume that bankruptcy functions according to the official rules and, by following these rules, that it provides a realistic opportunity for families to save their homes. The data revealed in this Article suggest, however, that home mortgage lenders often disobey the law and overreach in calculating the mortgage obligations of consumers. Such actions can cripple a family's efforts to save its home and undermine policies to promote sustainable home ownership.

...I conclude that mortgagees' behavior significantly threatens bankruptcy's potential to help families save their homes. Despite unambiguous federal rules designed to protect homeowners and to ensure the integrity of the bankruptcy process, mortgage companies frequently fail to comply with the laws that governs bankruptcy claims. A majority of the mortgage companies' proofs of claim lack the required documentation necessary to establish a valid debt. Fees and charges on bankruptcy claims often are identified poorly and sometimes do not appear to be reasonable. Each year, mortgage creditors assert that bankruptcy families owe them an aggregate of a least one billion dollars more than the families themselves believe are their outstanding mortgage debts. Although infractions are frequent and irregularities are sometime egregious, the bankruptcy system

routinely processes mortgage claims that are not lawful.  Far from serving as a significant check against mistake or misbehavior, the bankruptcy system routinely processes mortgage claims that clearly are not lawful.

...The overcharges and unreliable calculations they raise the specter of poor record keeping, failure to comply with consumer protection laws, and massive, consistent overcharging.

...The findings are a chilling reminder that imposing unambiguous legal rules does not ensure that the system will actually function to safeguard the rights of parties.  In a consumer context in particular, where individuals are not repeat players or institutional actors, observing the reality of laws that underperform or even misfire has crucial implications that echo far beyond the bankruptcy scheme.  An effective legal system requires more than merely putting words in a statute or relying on silence as an indication of acceptable and just behavior.

*Misbehavior and Mistake in Bankruptcy Mortgage Claims,* 87 Tex. L. Rev. 121 (2008).

Here, the insufficient proof of claim is just the starting point by which Citi undermines the bankruptcy system.  After an objection is filed, Citi takes one or both of the following strategies:

1.  It amends the claim and/or produces some, but not all of the documents on the day of the claim objection hearing.

2.  It engages in obstreperous litigation to prevent the debtor from getting the documents that were supposed to be attached to the claim in the first place.

## II. <u>STATEMENT OF FACTS</u>

Citi has chosen to direct the Court to "facts" that are outside the pleading, which are incorrect.  Plaintiffs provide the Court with a more complete set of facts and provide additional documents to refute Citi's assertions. [1]

The Debtors filed their bankruptcy case on February 5, 2007.

On February 26, 2007, Citi filed its Proof of Claim.  Complaint, <u>Ex</u>. <u>A</u>.  Citi claimed a deficiency of $29,044.19, of which  $16,068.52 was for alleged past due payments and the rest, $12,975.67, was for asserted fees and expenses.  There were no documents attached to the claim to back up the deficiency amounts sought.

Debtors' counsel tried for almost five months to obtain information about the deficiency amounts claimed, without success.  Ultimately, she was forced to file an objection to the claim.

Thereafter, Debtors' counsel tried for months to obtain information about the deficiency and documentation.  Citi, through its counsel, Barrett Daffin, failed and refused to provide information.

Finally, on December 10, 2007, Ms. Stone wrote Jeffrey Fleming of Barrett Daffin a letter:

> Dear Mr. Fleming:
>
> > ... A hearing is pending on December 19, 2007 at 9:00 a.m. in McAllen, Texas, which has been continued from a prior hearing on October 24, 2007.  The last hearing was continued at your request to allow you more time to obtain the information we have been requesting.  To this date, no information has been provided.

---

[1]  Plaintiffs do not imply that the court need look outside the pleadings to resolve Citi's Motion.

**PLAINTIFFS'  RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 5**

Please provide the following information by Monday, December 17, 2007.

1.      A detailed payment history from the inception of the loan which supports your client's position that the loan is in arrears in the amount stated in the proof of claim;

2.      Proof of the assignment of the note to your client;

3.      Proof that court approval was obtained in the prior bankruptcy or bankruptcies for the alleged $6,102.66 in attorneys' fees claimed, and specifically what were the charges and when were they incurred, and any supporting documentation you have indicating compliance with 11 U.S.C. Section 506 and Rule 2016(b) Disclosure of Compensation requirements;

4.      A detailed explanation, including check dates, amounts and payees, on the escrow shortage of $3136.10;

5.      A detailed explanation of the "uncollected late charges";

6.      Documentation of the claimed "fax fee";

7.      Supporting documentation of the "BPO", including reports issued by the person or entity engaged by your client to perform the service, for which $377 is claimed;

8.      Detailed explanation and proof of the item described as "Pre-con FCL" in the amount of $2,912.27.

Thank you for your attention to this matter.

Ex. B to Complaint.

Barrett's paralegal then over a period of days in December, 2007, sent the information and materials attached hereto as Exhibit A.[2]  The documentation was insufficient to support the amounts claimed.

_____

[2]      The only "documents" provided in December 2007 was a BPO with no invoice or payment evidence, and an indecipherable pay history.

**PLAINTIFFS' RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 6**

Because Citi's counsel would not send sufficient documentation for the amounts claimed, Debtors served Interrogatories, Request for Production of Documents, and Request for Admissions.

After several extensions were granted at Citi's request, Citi served Responses to the Request for Admissions on September 24, 2008.  Citi never filed a response or objections to the Debtors' Document Production Requests or Interrogatories on the date they were due or thereafter.

*After* Plaintiffs filed this suit on February 2, 2009,[3]  Citi sent on February 3, 2009 at 9:04 p.m., additional (but still insufficient) documents.  Exhibit B [Burks letter is redacted].

Then Citi served, on February 4, 2009, purported objections and responses to Plaintiffs' Interrogatories and Request for Production of Documents.  There were not any documents attached to the responses.[4]

On February 5, 2009, Gray Burks of Barrett filed his "witness and exhibit list" and sent over a set of documents that included *yet some additional documents* that had never been provided in the previous two years.  Exhibit C.

---

[3]    Not February 5, as Citi claims. Def.(s) Motion p. 2.

[4]

   Citi asserts that "through the Discovery process, [Citi] has given Plaintiffs backup for the amounts contained in the proof of claim."  As far as Plaintiffs can tell, the only "backup" given  *before* this lawsuit was filed is attached hereto as Exhibit A.

**PLAINTIFFS'  RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 7**

Citi also claims that the "amount" in the proof of claim was correct.  Def.'s Motion, p.2 [5]

Plaintiffs do not know what "correct" means.  To this day, Citi has not provided full

documentation to substantiate its claim, so Plaintiffs dispute that the deficiency claim is

allowable in the amount on the proof of claim.

Citi also states, as "fact", that there was no adverse impact on the Plaintiffs' bankruptcy

case.  Plaintiffs' attorneys spent two years sending numerous e-mails, letters and discovery

attempting to simply get the documents that should have been attached to the proof of claim in

the first place.  Plaintiffs' attorneys also spent hours trying to decipher the undecipherable and

insufficient documents Citi did send in December 2007.  The entire confirmation process was

upset and delayed by Citi's failure and refusal to provide the documents that evidenced its claim.

## III.  ARGUMENT AND AUTHORITIES

The standards for dismissal under 12(b)(1) and (6) are set forth in *Rodriguez*, 396 B.R. at

447-48, 456.  Under those standards, the Court cannot dismiss this case.

A.     Citi's abuse of the bankruptcy process is widespread
       and continues unabated, despite numerous court warnings.

Citi asserts that "based on the facts, in this one case" Plaintiffs filed a class action.  Def's

Motion p. 2.  In response, Plaintiffs point to at least four written opinions in which CitiBank's

---

[5]

  Citi makes a statement on page 2 of its Motion that is indicative of the pattern of bankruptcy abuse for which
Plaintiffs sue.  Citi states "moreover, while CTB's claim *description* could have been clearer, the *amount* stated in
the proof of claim was correct."  Such statement shows Citi believes it can falsely label and falsely describe the
amounts it is claiming on its proof of claim, never provide documents for those amounts, and cavalierly say to this
Court "the amount was correct," after denying Plaintiffs for *two years* the documentation that would allow them and
this Court to calculate whether or not the amount claimed was allowable.  *See Gonzalez,* 372 B.R. at 845-46.
(debtors merely seeking to assure that the amount of the claim asserted by the creditor was justified.)  *See Coates*,
292 B.R. at 902 (noting "the *patent absurdity* of LITTON LOAN'S position that the DEBTOR be forced to evaluate
the reasonableness of the attorney fees and costs without disclosure by LITTON LOAN'S attorneys of it time
records, the terms of its fee agreement, and receipts for expenses incurred.")(emphasis added).

mortgage-lending subsidiaries engaged in activities similar to those alleged here. [6]  The judges in those cases expressed concern and even outrage at Citi's proof-of-claim practices.

In *re Anderson,* 330 B.R. 180 (Bankr. S.D. Text. 2005), the Court disallowed Citi Financial Mortgage Company's secured status in a case where Citi [7] failed to attach the note and deed of trust to the claim, and failed to attend a hearing.  The Court found that Citi's actions in connection with the proof of claim were sufficiently wanting in reasonable care as to become the equivalent of a lack of good faith.  *Id.* at 190.

In *In re Gonzalez,* 372 BR. 837 (Bankr. S.D. Tex. 2007), Judge Leif Clark disallowed Citi Mortgage, Inc.'s claim for "unpaid corporate advances," the amount for "either tax or insurance" and claims "for unpaid expense advances."  *Id.* at 839.  Judge Clark denied Citi's motion for reconsideration after it failed to respond to the debtor's objection.  *Id.* at 846. [8]

In *In re Larken* 2008 Bankr. LEXIS 1522 (Bankr. S.D. Ohio May 22, 2008), Citi Mortgage Inc., "after much back and forth" finally conceded that the description of its charges in the proof of claim were wrong.  *Id.* at *4-5.  Moreover, the expenses disputed were not even identified in the proof of claim, but rather fell within a general category labeled "Pre-Petition Foreclosure Costs."  Finding Citi's actions to be "very troubling," the Court stated, "this Court

---

[6]   Plaintiffs are entitled to class discovery.  Plaintiffs just note these cases are already public record.

[7]   The Citibank subsidiaries are referred to in this section as "Citi".

[8]
   Tellingly, Citi asserted in *Gonzalez* that "the failure to address Movant's underlying claim could prevent the Debtor's obligation should the plan be completed and the Debtor receive a discharge." *Id.* at 839-40.  Citi argued, basically, that even though the Court had disallowed these charges, once the debtors complete their plan and received their discharge, Citi would be free to reassert its states' law rights against the debtor's home for the full amount it claims to be owed, regardless of the disallowance of a portion of that claim in the bankruptcy case, and despite the debtor's successful completion of their plan. *Id. at 843.*  This statement, of course, is indicative of Citi's disdain for the rulings of the bankruptcy courts of this country.  In other words, it does not matter *even if* the bankruptcy court enters an order specifically disallowing fees.  Citi believes it can, and it will, collect those amounts after discharge.

**PLAINTIFFS' RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 9**

agrees with *In re Coates,* 292 BR. 894 (Bankr. S.D. Ill. 2003), that a creditor must do more to satisfy the burden of production.  Specifically, the creditor must attach to the proof of claim copies of invoices or receipts for all expenses incurred."  *Id.* at *6.

Finally, in *In re Prevo,* 394 BR. 847 (Bankr.S.D. Text. 2008)*,* the Court found that the proof-of-claim practices of Citi Residential Lending, Inc. and other lenders were wholly unacceptable.  *Id.* 848. [9]

In *Prevo*, the Court specifically stated that amending the proof of claim only after the debtor files an objection to "withdraw fees that should not have been included in the first instance" is unsatisfactory because it does not address the larger problem with the way mortgage companies are filing proofs of claims.  *Id.* at 851, *citing Tate v. Nations Bank Corp (In re Tate),* B.R. 653, 666 (Bankr. W.D.N.C. 2000) (noting that "debtors should not be saddled with expenses incurred in filing objections to proofs of claims that were incorrectly filed in the first place.  Lenders must take some responsibility for complying with the minimum requirements for filing proofs of claims by attaching supporting documents in the first instance before the issue by debtors' counsel.").

Thus, in addition to the *Coates* opinion and numerous other opinions going back years, and the widely-circulated Porter abstract, Citi had four separate opinions telling *it* that *its* proof-of-claims practices were unacceptable.

---

[9]

  Citi's actions in *Prevo* were quite similar to Citi's actions in this case.  In *Prevo*, Citi's claim did not include a payment history, evidence that Citi was the owner or holder of the note, the note itself, the deed of trust or any bills, invoices, or other documentation to support the reasonableness of the fees.  Citi filed an amended claim in which it reduced the escrow advances from $4,793.08 to $2,569.99, *but not* attaching documents to support late charges, BPO fees and foreclosure fees.

**PLAINTIFFS' RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 10**

In addition, Citi's counsel, Barrett Daffin, had been sanctioned and chastised numerous times for actions similar to those taken here.  *See e.g., In re Allen,* 2007 Bankr. LEXIS 2063 (Bankr. S.D. Tex. 2007 June 18, 2007).  In *Allen*, the Court listed eight cases (including *Anderson* and *In re Poncheddu,* 338 B.R. 729 (Bankr. S.D. Tex. 2006), [10] that showed that Barrett engaged in a pattern of improper conduct and that Barrett and been warned numerous time to correct its deficiencies.  The Court sanctioned Barrett $75,000. [11]  *See also, In re Parsley,* 384 B.R. 138 (Bankr. S.D. Tex. 2008).  As an elaborate and expensive defense in *Parsley* and Allen, Barrett claimed it had instituted numerous policies to correct its problems.

Amazingly, these opinions all came out *before* the date that Citi's discovery was due in the Rojas bankruptcy case, September 24, 2008.  Nevertheless, on that date, (which had been extended at Citi's request) Citi provided only answers to request for admissions.  It did not serve responses to the document production request, or interrogatories, or provide any additional documents to support its claim.  Indeed Citi did not provide debtors with any additional documents to support its claim until after it was sued in this class action lawsuit.

The post-suit deluge of additional, previously-withheld documents speaks volumes.  Citi sent the documents on February 3, 4 and 5, 2009 because that is when, according to its counsel, such documents "were due."  According to Citi, such documents apparently are "not due" to be filed with the proof of claim, even though the Rules say they are.  The documents are "not due"

---

[10]

    In *Porcheddu*, this Court discussed Barrett's conduct in *Tate* (involving proofs of claim) at length, and Barrett briefed *Tate*.  The Court discussed its sanctioning power, and imposed $65,000 in sanctions.

[11]   One of the cases cited was *In re Thompson*, Case No. 01-10399, 2003 Bankr. LEXIS 2197 (Bankr. N.D. Tex. 2003), where the court imposed jointly on Citi Financial Mortgage Company and Barrett  sanctions and attorneys' fees for a false motion to left stay.

**PLAINTIFFS'  RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 11**

when debtor's counsel requests them; they are "not due" after debtor's counsel files an objection, they are "not due" in response to a letter specifically asking for them, and they are even "not due" as a response to a formal document production request.

In other words, despite repeated warnings, repeated condemnation and repeated sanctions, Barrett and Citi's stance, in February 2009, is that the documents that are required to be attached to the claim need not, indeed will not, be given to debtor's counsel until the hearing on a claim objection, if even then.

B.     The claims process is fundamental to bankruptcy and the rules are clear.

The Supreme Court has characterized the claim determination process as one of "basic importance in the administration of a bankruptcy estate," without which "unmeritorius or excessive claims might dilute the participation of the legitimate claimants. *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 471-72, 91 L.Ed. 504 (1947)(*cited by In re Coates*, 292 B.R. 894, 899 (Bankr. C.D. Ill. 2003)(explaining the underlying importance of the claims process with respect to mortgage loans in Chapter 13). *See In re Gilbreath*, 395 B.R. 356 (Bankr. S.D. Tex. 2008)(explaining parties's burdens with respect to proofs of claim.)

C.     All of Citi's arguments for dismissal fail in light of *Campbell*.

The Fifth Circuit would not have said, pointedly, "of course, the bankruptcy court has other mechanisms to impose sanctions on parties who may attempt to abuse the procedural mechanisms within the bankruptcy court," if it believed any of the already-rejected arguments that Citi now makes were viable." *See Campbell*, 545 F. 3d at 356, n. 1.

D.     Citi's "criminal contempt" arguments for dismissal fail.

Citi essentially argues that anything the Court could do in this case to redress the wrongs alleged would constitute criminal contempt, so the Court cannot do anything. Plaintiffs

**PLAINTIFFS' RESPONSE**
**TO DEFENDANT'S MOTION TO DISMISS- Page 12**

agree that the bankruptcy court cannot hold criminal contemp proceedings.  Plaintiffs are not

seeking criminal contempt.   The Court's use of 105(a) powers is not imposing criminal

contempt.  At their core, Citi's arguments about contempt fail because Citi refuses to accept, or

even really address, the Court's broad authority to redress abuse of process under 11 U.S.C.

§105(a).   Thus, many of its arguments simply are not appropriate to the facts of this case and the

relief Plaintiffs seek.

For instance, Citi starts its argument with a patently faulty premise:  "Any monetary

penalty awarded in this case would be a criminal contempt penalty."  Def's Motion p. 12.  Citi

also states, "Plaintiffs have not been damaged" and that as such, " the sanctions they seek could

only be awarded for criminal contempt."  *Id.*  Nether assumption is correct, the second does not

follow from the first, and Citi cites no authority for either.

Citi also makes arguments that Plaintiffs have not pled the "elements" of contempt, there

is no "private cause of action" for contempt, the Court has no inherent powers for criminal

contempt, and that the Court cannot use contempt to enforce another Court's order.  *See* Def's

Motion pp. 11-17.  Citi's arguments are flawed because the foundation for its contemp argument

is *In re Rodriguez,* 2007 U.S. Dist. Lexis, 1858 (W.D. Tex. February 20, 2007) (hereafter, "*Rene

Rodriguez*").  In that case, after noting that bankruptcy courts have the authority to conduct civil

contempt proceedings, *Id.* at *19, the court cites a non-bankruptcy case, and states that the test

for contempt requires the showing that (1) a court order was in effect; (2) the order required

certain conduct; and (3) the respondent failed to comply with the order.  *Id.*

The case that forms the foundation of Citi's arguments is not on point.  The wrongs

Plaintiffs seek to address do not involve a court order; they involve Citi's systemic abuse of the

claims-processing functions of the Bankruptcy Code, and the courts and parties that operate in that system.

The only court to have considered the *Rene Rodriguez* case was this Court in *BFG Investments, L.L.C. v. Texas State Bank (In re TBYRD),* 2007 Bankr. LEXIS 4051 (Bankr. S.D. Tex., November 30, 2007). Similar to the arguments made here by Citi, the sanctioned parties in TBYRD argued that any monetary sanctions imposed for past behavior and payable to the court were, by definition, criminal sanctions. *Id. at *12.*

This court carefully analyzed *Rene Rodriguez* and the law of criminal contempt proceedings. *Id.* at 2-5. This Court held that sanctions based on prior conduct and payable to the court are not *per se* criminal sanctions and that Rule 9011 sanctions may be imposed for criminal conduct if that conduct violates both Title 11 and Title 18. *Id.* at 8-19. This Court noted that the imposition of a monetary sanction, payable to the clerk of the court against a member of the bar for his conduct before the court, is not a matter of criminal contempt. *Id.* at 19-20.

Importantly, the *TBYRD* complainers there could not reconcile their argument with the plain language of Rule 9011. *Id.* at *17. Citi's arguments about criminal contempt (and most of its other arguments) fail here because, like the parties in TBYRD, Citi ignores the plain language of the statute, here, 11 U.S.C. §105(a).

Section 105(a) provides:

> **The Court may issue *any* order, process or judgment necessary or appropriate to carry out the provision of this title.** No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking ***any* action** or **making *any* determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.**

11 U.S.C. §105(a) (emphasis added).  *See Rodriguez*, 396 B.R. at 458-459.  In *Rodriguez*, the Court discussed *Marrama* and the Courts' broad powers under §105(a):

> Courts, appropriately applying §105's plain language, have used §105 to grant plaintiffs a broad range of remedies, including any damage remedy available in a private cause of action.  *Jove Eng'g*, Inc. 92 F. 3d at 1554 ("Therefore, the plain meaning of  §105(a) encompasses *any* type of order, whether **injunctive, compensative or punitive**, as long as it is necessary or appropriate to carry out the provisions of the Bankruptcy Code"); *Placid Ref. Co. v. Terrebonne Fuel and Lube, Inc. (In re Terrebonne Fuel and Lube, Inc.),* 108 F. 3d 609 613 (5th Cir. 1997) ("Reading [§105(a)] under its plain meaning, we conclude that a bankruptcy court can issue **any order,** *including* **a civil contempt order**, necessary to carry out the provisions of the bankruptcy code...which compensate a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. §1141....") (emphasis added); *In re Nat'l Gysum Co.*, 118 F.3d at 1063 (noting that the "discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt").

*Rodriguez*, 396 B.R. at 458 (emphasis added).  Thus, civil contempt is just *one* of the many powers the Court has under §105(a).  Exercising the broad grant of authority under 105(a) does not mean that the Court is subjecting Citi to criminal contempt.  *See e.g.*, *Select Portfolio Services, Inc. v. Galindo (In re Galindo)*, 2006 U.S. Dist. LEXIS 53077 (S.D. Tex. July 31, 2006) (bankruptcy court's sanctions not criminal).

Citi also states that Rule 9011, and the claims processes in the Code and Rules, are sufficient such that the Court need not use its inherent powers (or those under 105(a)).

Clearly that is not the case, as the recitation of facts in this case, other opinions, and scholarly legal writings confirm. [12]

Judge Bohm recently discussed *§105* sanctions with respect to the criminal/civil issue, and disposed of the arguments Citi makes here. *Barry v. Sommers (In re Cochener),* 360 B.R. 542 (Bankr S.D. Text. 2007), *aff'd Cochener v. Barry*, 297 Fed. Appx. 382 (5th Cir. 2008) (unpublished opinion). In sanctioning the Debtor's attorney, the Court first noted the several reasons why Bankruptcy Rule 9011 was not available. *Id. at 569.* The Court then noted that the powers derived by the Bankruptcy Court *§105* are the same inherent powers discussed by the Supreme Court in *Chambers* v. *NASCO*, 501 U.S. 32. *See Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)* 77 F. 3d. 278, 283-84 (9th Cir. 1966). ("Congress impliedly recognized that Bankruptcy Courts have the inherent power to sanction that *Chambers* recognized exists with Article III Courts... We believe, and hold that *§105* intended to imbue the Bankruptcy Court with the inherited power recognized the Supreme Court in *Chambers*").

In *Chambers*, the Supreme Court stated that a federal court's inherent power to sanction bad faith context serves as the dual purpose covering the gaps where there are no applicable rules and also covering situations where neither the statute nor the rules are up to the task." *Chambers, 501 U.S. at 50.* However, and importantly, a federal court is not

---

[12]

    There are several reasons why the rules are insufficient to deal with this problem. First, 9011 is geared to litigants who file pleadings in bad faith in a particular case. Here, Citi has a specific policy to undermine an entire statutory scheme with its actions. Citi's policy is to **not** provide evidence of amounts it claims in its proofs of claim. It would be difficult, if not impossible, for debtors' counsel to draft motions for sanctions pointing out defects in claims, when the information, and documentation is so scarce that no one can tell whether the claim is correct or not. Moreover, debtors counsel should not be forced to draft a Rule 11 sanctions motion for every mortgage claim simply to force the mortgage lenders to do what they are supposed to do in the first place - filed valid, supported claims. *Prevo*, 394 B.R. at 848. Moreover, 28 U.S.C. §1927 addresses only attorneys.

"forbidden to sanction bad faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id.* Also, the fact that Rule 9011 fails to provide a basis for sanctions does not preclude the court from relying on its inherent powers and *§105*. *Cochener*, 360 B.R. at 571. Nor is the Bankruptcy Court's inherent powers limited to enforcing its own orders. *Id.*

The conduct being addressed in this case is similar to that in *Cochener*. As discussed, Rule 11 does not provide an adequate remedy. Citi purposely files proofs of claims that do not comply Rule 3001(c). These claims include deficiency amounts that Citi hopes to reap from the debtor by listing those amounts falsely or with meaningless descriptions, failing to attach documents evidencing those charges, and then refusing to provide the documents that should have been attached to the claim or sent upon informal request. This failure to provide documents is another abuse and is aimed extending the litigation and wearing out the debtor and the trustees so that the claim will be paid.

E.    Citi's "private right of action" and other arguments for dismissal fail.

Citi also asserts, in various places, the "no private right of action" argument. *See* Def's Motion pp. 10, 17-21. City also argues that the Court cannot award attorney's fees and cannot enter declaratory or injunctive relief. Def's Motion pp. 22-24.

These arguments fail for the same reasons stated above – they ignore the plain language of Section 105(a) and the recent opinions, including U.S. Supreme Court and Fifth Circuit opinions, instructing that the Court use its broad authority under §105(a) to prevent abuse of the Bankruptcy Code and the bankruptcy processes.

As to the "private right of action" argument, as in *Rodriguez*:

> In this adversary proceeding, Plaintiffs do not ask the Court to
> imply a private right of action from the code provisions allegedly
> violated.  Rather, Plaintiffs request relief from the Court's inherent and
> contempt authority, and the Court's authority to issue orders necessary
> to effectuate the purposes of the Bankruptcy Code provided by §105.
> The complaint is, at its heart, a complaint seeking relief under the court's
> contempt authority and §105.

*Rodriguez,* 396 B.R. at 456-57.

Plaintiffs have already have cited to this Court's opinion discussing the Court's §105

powers, and Plaintiffs adopt the Court's entire discussion for purposes of this brief.

*Rodriguez*, 396 BR. at 456-461.  In *Rodriguez*, the Court discusses the wide array of

remedies and powers available to the Court, and cites numerous cases, including ones

awarding monetary damages, punitive damages, attorney's fees, declaratory and injunctive

relief for abuses.  *Id.  See also, In re Final Analysis, Inc*., 2008 Bankr. LEXIS 1540 at *30

(Bankr. Md. May 16, 2008)(basic purpose of Section 105(a) is to "enable a court to do

whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a

bankruptcy case." Such equitable powers should be exercised where it is necessary or

appropriate to implement provisions of the Bankruptcy Code *or* where equity and

substantial justice requires ); *In re Coleman Enterprises*, 266 B.R. 423, 435 (Bankr. D.

Minn. 2001)("[Section] 105(a) puts no facial restriction on the *structure* of relief that the

courts can fashion under it, as long as they are furthering a principle identifiable in the

applicable substantive law of bankruptcy.  Section 105(a) was enacted to promote such

enforcement, through means that are tailored [to] the innumerable scenarios of financial

distress in bankruptcy cases.") [13]

    Citi's first argument was made by these same lawyers in *Rodriguez* and rejected. "The

jurisdictional test is not whether each cause of action relates to or arises in or under the

Rodriguez bankruptcy case. The test is whether each cause of action relates to or arises in

or under any bankruptcy case. " *Rodriguez*, 396 B.R. at 454 (Plaintiffs assert violations of

substantive Bankruptcy Code and Rule provisions, substantive bankruptcy rights and

substantive bankruptcy processes.)

    Citi also argues, wrongly, that the "majority" of courts have held that bankruptcy courts

do not have subject matter jurisdiction over putative class members' claims, Def.'s Motion,

p. 14, while completely ignoring the numerous opinions finding that the bankruptcy court

has jurisdiction over a nationwide class of debtors. [14]

---

[13]

Additional cases noting and/or providing broad remedies under 105(a) include, *In re Varona*, 388 B.R. 705 (388 B.R. 705 (Bankr. E.D. Va. 2008)(court can use 105 to punish the filing of a false or fraudulent claim); *Prevo*, 394 B.R. at 851 (court issued show cause order for Citi's proof of claim abuses for possible payment of debtors' attorneys' fees); *Ryerson v. Chase Manhattan Mortgage Corporation (In re Ryerson)*, 2006 Bankr. LEXIS 3721 (Bankr. N.D. Fla. 2006)(plaintiffs sought remedies including reimbursement of late charges and fees, actual damages, punitive damages, a declaration that the defendant's practices were illegal and the issuance of a permanent injunction; summary judgment of lender denied); *In re Schuessler*, 2008 Bankr. LEXIS 1000 at *65-66, 84-85 (Bankr. S.D. D.M.Y. April 10, 2008) (accounting system utilized by Chase Home Finance to deal with bankruptcy debtors was an abuse of process; court used 105 to award to all costs and attorneys' fees and sanction Chase for its conduct); *In re Ambotiene*, 316 B.R. 25, 36 (Bankr. E.D.N.Y. 2004) ( courts have concluded that Section 105 provides a sound and appropriate basis for a bankruptcy court to make an award of attorneys' fees and costs). *In re Gorshtein*, 285 B.R. 118 (Bankr. S.D.N.Y. 2002)(court imposed sanctions against creditors that filed motions for relief from stay alleging that debtors were behind when debtors were not in fact behind); *In re Papp*, 2004 Bankr. LEXIS 2416 (Bankr. S.C. 2004) (court used §105 to sanction GMAC for numerous false allegations of default, refusal to abide by agreements and court orders, and other actions that resulted in attempted wrongful foreclosure); *Sanchez v. Ameriquest Mortgage Co. (In re Sanchez)*, 372 B.R. 289, 303-05 (Bankr. S.D. Tex. 2007) (Court issued injunction prohibiting lender from charging hidden, unapproved fees.); *In re Slick*, 2002 Bankr. LEXIS 772 (Bankr. S.D. Ala. May 10, 2002) (using §105 to award $2,000,000 in sanctions for failure to disclose fees even though numerous courts previously made the duty to disclose clear).

[14]

    Courts holding that the bankruptcy court has jurisdiction over a nationwide class include *In re Noletto*, 244 B.R. 845 (Bankr. S.D. Ala. 2000); *Fleet v. U.S. Consumer Council Inc.. (In re Fleet)*, 53 B.R. 833 (Bankr. E.D. Pa. 1985);

Citi also argues that the bankruptcy court's jurisdiction is narrow and *in rem*.  Citi
argues this Court does not have jurisdiction over absent class members claims, because,
allegedly, the courts in which those class member's cases were filed (the home courts) have
exclusive jurisdiction over those members' claims.  Def.'s Motion, pp. 8 - 9.

In  *In re Noletto*, 244 B.R. 845 (Bankr. S.D. Ala. 2000), the court showed that the
Bankruptcy Code, unlike its predecessor, the Bankruptcy Act, gives the district courts *in
personam* as well as *in rem* jurisdiction so that court no longer is restricted to dealing only
with assets under its control.  Bankruptcy jurisdiction was purposely designed to encompass
all the issues debtors could encounter in a bankruptcy case, including debtor class actions.
*Id.* at 850.  Indeed, such jurisdiction is appropriate because otherwise there might be no

---

*Powe v. Chrysler Fin. Corp. LLC (In re Powe)*, 278 B.R. 539, 280 B.R. 728 (Bankr. S.D. Ala. 2002), appeal
dismissed sub nom. *Chrysler Fin. Corp. v. Powe*, 312 F.3d 1241 (11th Cir. 2002); *Sheffield v. Homeside Lending,
Inc. (In re Sheffield)*, 281 B.R. 24 (Bankr. S.D. Ala. 2000); *In re Harris*, 280 B.R. 876 (Bankr. S.D. Ala. 2001), app.
dism, *Chrysler v. Financial Corp. v. Powe*, 312 F.3d 1241 (11th Cir. 2002); *In re Slick*, 2002 Bankr. LEXIS  772
(Bankr. S.D. Ala. May 10, 2002); *Bank United v. Manley*, 273 B.R. 229 (N.D. Ala. 2001); *Harris v. Washington
Mutual Home Loans (In re Harris )*, 297 B.R. 61 (Bankr. N.D. Miss. 2003), aff'd *Harris v. Washington Mut. Home
Loans, Inc.. (In re Harris)*, 312 B.R. 591 (N.D. Miss 2004); *Glenn v. Fidelity Financial Service, Inc.* 1996 U.S. Dist.
LEXIS 1835 (S.D. Ala February 1, 1996).  *See also, Rodriguez*, 396 B.R. 455, n. 12 (*citing In re Sims*, 278 B.R. 457
(Bankr. E.D. Tenn. 2002), which cites numerous opinions,  and Bankruptcy Rule 7023).  Indeed, "the more recent
and better reasoned authority demonstrates that the Court has jurisdiction over all class claims in this [nationwide
class] action."  *Tate v. Nationsbanc Mortgage Corp. (In re Tate)*, 253 B.R. 653, 663 (Bankr. W.D. N.C. 2000).

Courts certifying nationwide classes include:  Conley v. Sears, Roebuck & Co., No. 97-11149 (D. Mass.),
*Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 185--86  (D. Mass. 1998) and *Brioso v. Sears, Roebuck & Co.*, Adv.
Proc. No. 97-1222 (Bankr. D. Mass.)(settlement returned 150% of debt collected pursuant to invalid reaffirmations
to approximately 190,000 debtors); *In re Coggin*, 155 B.R. 934 (Bankr. E.D. N. C. 1993) (Bankruptcy court
certified nationwide class concerning Sears reaffirmation agreements); *Harris v. Washington Mutual Home Loans
(In re Harris)*, 297 B.R. 61 (Bankr. N.D. Miss. 2003), aff'd, *Harris v. Washington Mut. Home Loans, Inc. (In re
Harris)*, 312 B.R. 591 (N.D. Miss 2004)(after district court affirmed lower court's ruling that it had jurisdiction over
nationwide class, at least two defendants settled on class-wide basis); *In re Sims*, 278 B.R. 457 (Bankr. E.D. Tenn.
2002)(class settlement);  *In re Noletto*, 280 B.R. 868 (Bankr. S.D. Ala. 2001); *In re Sheffield*, 281 B.R. 24 (Bankr.
S.D. Ala. 2002); *In re Harris*, 280 B.R. 876 (Bankr. S.D. Ala. 2001), app. dism, *Chrysler v. Financial Corp. v.
Powe*, 312 F.3d *1241; In re Slick*, Case No. 98-14378-MAM, Adv. No. 99-1136, 2002 Bankr. LEXIS  772 (Bankr.
S.D. Ala. May 10, 2002).

affordable universal redress for creditor bankruptcy abuses, such as those clearly present in this case. *See id.* at 850.

The Court rejected the defendant's "home court" argument. When the rights the debtor seek to enforce emanate from the Bankruptcy Code itself, the authority to enforce those rights does not remain only with the court in which the debtor's bankruptcy was pending. *See Davis v. Retail Finance Co. of Texas, Inc.*, 2006 Bankr. LEXIS 2601 (Bankr. S.D. Tex. September 27, 2006) (*citing Bessette v. Avco Fin. Services Inc.*, 230 F.3d 439, 446 (1ˢᵗ Cir. 2000).

The Court in *Noletto* determined that §1134(e) does not vest the home court with exclusive jurisdiction through a detailed analysis of the inconsistencies of 28 U.S.C. §1334(e) and other bankruptcy-related jurisdiction, removal and venue provisions of title 28. *Id. See Noletto,* 244 B.R. at 850 (rejecting *Williams*); *Hillblom v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 61 B.R. 758, 766, 773-776 (S.D. Tex. 1986)(court transferred debtor's case for turnover of property to the estate under §542 to the United States District Court for the District of Micronesia, noting, "The exclusivity argument [under § 1334(e)] is unpersuasive because it would render the venue provisions of title 28 virtually meaningless.")

From the analysis, the *Noletto* Court further held that § 1334(e) does not make the "home court" the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code, such as the ones present here, because such proceedings are not *in rem* matters. Like in *Noletto*, the proceedings here seek to impose liability on Citi for various actions taken and not taken by it. They have nothing to do with a specific item of property held by the debtor or all debtors. *See id.* at 854.

WHEREFORE, Plaintiffs request that the Court deny CitiMortgage's motion to dismiss, grant Plaintiffs permission to amend the Complaint if and to the extent necessary, and grant them such other and further relief as to which they may be entitled.

Dated: April 23, 2009

<div style="margin-left: 40%;">

Respectfully submitted,

THE KELLETT LAW FIRM,
A PROFESSIONAL CORPORATION


By: */s/ Karen L. Kellett*
   Karen L. Kellett
   State Bar No. 11199520
Founders Square
900 Jackson Street, Suite 120
Dallas, TX 75202
(214) 292-3660 - Telephone
(214) 744-3666 - Telecopy


THE STONE LAW FIRM, P.C.


By: */s/ Ellen C. Stone*
    Ellen C. Stone
    State Bar No. 19305000

62 E. Price Road
Brownsville, TX 78520
(956) 546-9398 - Telephone
(956) 542-1478 - Telecopy

Antonio Martinez, Jr.
State Bar No. 24007607
4900 North Tenth Street, Suite E-2
McAllen, TX 78504
(956) 630-2822 - Telephone
(956) 631-0742 - Telecopy

ATTORNEYS FOR PLAINTIFFS

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 23, 2009, I caused the foregoing to be served on the parties listed below via e-mail.

 <u>/s/ Karen L. Kellett</u>
Karen L. Kellett

**<u>U.S. TRUSTEE:</u>**
Charles Sterbach
Barbara Jue
606 N. Carancahua, Ste. 1107
Corpus Christi, TX  77476

**<u>ATTORNEYS FOR CITICORP</u>**
**<u>TRUST BANK</u>**

Edwin R. DeYoung
Roger Cowie
Doug Skierski
Lock Lord Bissell & Liddelll LLP
2200 Ross Ave.,Suite 2200
Dallas, TX 75201
H.  Gray Burks, IV
Barrett, Daffin, Frappier, Turner &
   Engel, L.L.P.
1900 St. James Place, Suite 500
Houston, TX  77056