IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| ANGEL ROJAS and YANETT ROJAS, § | CASE NO. 07-70058-M | |
| § | | |
| Debtors. § | | |
| § | | |
| § | | |
| ANGEL AND YENETT ROJAS, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| vs. § | Adv. Proc. No. 09-07003 | |
| § | | |
| CITICORP TRUST BANK, fsb f/k/a § | | |
| TRAVELERS BANK & TRUST, § | | |
| § | | |
| Defendant. § | | |
| § | | |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Citicorp Trust Bank, fsb f/k/a Travelers Bank and Trust ("CTB"), hereby submits its Reply in support of its Motion to Dismiss.

### I.  INTRODUCTION

Despite the colorful invective in the Complaint and the Response to the Motion to Dismiss, the Plaintiffs in this case refuse to acknowledge that the figures in the proof of claim filed by CTB (the "Proof of Claim") were correct. Try as they may to contort the descriptions in the Proof of Claim by selectively sampling from the documents, the pleadings simply do not support the asserted causes of action. Plaintiffs simply do not state a claim for the relief sought for themselves, much less a nationwide class.

Further, the Plaintiffs' Response makes much ado about the decisions of the Fifth Circuit Court of Appeals in *Campbell v. Countrywide Homes Loans, Inc.* at 356 (5th Cir. 2008). However, *Campbell* did not expand the power of the court in any way and does not stand for the proposition that section 105 creates a cause of action which may be asserted in an adversary proceeding as Plaintiffs would have this court believe. Even if some form of relief were appropriate, the Court lacks the jurisdiction to grant the relief requested in the Complaint.

Plaintiffs failed to state a claim upon which relief can be granted and the Court lacks the jurisdiction to grant the requested relief, therefore the Complaint should be dismissed.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER OF THE PLAINTIFFS' CLAIMS.

### A. This Court does not have jurisdiction over claims of debtors whose cases are pending in other judicial districts.

In responding to CTB's position that this Court may not hear claims related to cases filed in jurisdictions other than the United States District Court for the Southern District of Texas (Motion to Dismiss at 68), the Plaintiffs assert that CTB has ignored certain opinions. (Response at 19). However, it is the Plaintiffs, not CTB, who have chosen to rely on a minority position and thereby ignore the majority of cases addressing this issue. (*Id.*) The class action procedural device under Rule 23 does not change the traditional rules to analyze whether a claim is properly within a bankruptcy court's jurisdiction. Under governing law regarding the scope of bankruptcy jurisdiction, this Court lacks jurisdiction over absent class members' claims because those claims will have no impact upon the Plaintiffs' bankruptcy estate. Moreover, the Court lacks jurisdiction to hear claims allegedly arising in cases filed in other judicial districts because those

claims were not (and could not be) referred to the bankruptcy court in the Southern District of Texas for decision.

### 1. The class action procedural device does not expand the scope of a bankruptcy court's jurisdiction.

"The Federal Rules of Civil Procedure do not expand or restrict the jurisdiction that the court otherwise possesses." *Waffenschidt v. Mackay*, 763 F.2d 711, 720 (5th Cir. 1985). The Supreme Court has explained in the context of class actions that:

> the Congress that permitted the Federal Rules to go into effect was assured before doing so that none of the Rules would expand or contract the jurisdiction of federal courts. If there is a present need to expand the jurisdiction of those courts we cannot overlook the fact that the Constitution specifically vests that power in the Congress, not in the courts.

*Snyder v. Harris*, 394 U.S. 332, 341-42 (1969). Indeed, both the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure explain that those rules do not extend the scope of the court's jurisdiction. *See* FED. R. CIV. P. 82; FED. R. BANKR. P. 9030. Accordingly, this Court should analyze a bankruptcy court's jurisdiction to hear the claims of absent class members using the traditional analysis applicable to determine whether bankruptcy jurisdiction is proper. A bankruptcy court cannot exercise supplemental jurisdiction to hear claims of absent class members that are not otherwise properly before the Court. *See Walker v. The Cadle Co. (In re Walker)*, 51 F.3d 562, 570 (5th Cir. 1995).

### 2. Federal jurisdiction does not exist over absent class members' claims under 28 U.S.C. § 1334.

The bankruptcy court lacks jurisdiction over the claims of putative class members residing in other judicial districts because the claims of absent class members are not "related to" the Plaintiffs' bankruptcy case, and will have no impact on their bankruptcy estate. *See Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir. 1987).

Under the Fifth Circuit's two-pronged jurisdictional test, a claim owned by an unnamed debtor in a bankruptcy case separate from that of any of the individual Plaintiffs cannot satisfy either prong because that claim will neither 1) alter the "rights, obligations and choices of action" of any of the Plaintiffs, nor 2) have any effect on the Plaintiffs' bankruptcy estate. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 752 (5th Cir. 1995). Succinctly stated, the claims of any putative class members belong to those debtors and therefore cannot affect the *Plaintiffs'* estate under any circumstances. Even if the alleged claims of unnamed putative class members are claims of their bankruptcy estates (which, as explained above, they would not be to the extent that, like the Plaintiffs' individual claims, they concern exempt homestead property), *these putative claims nevertheless belong to those unnamed debtors' estates*. They do not belong to the Plaintiffs' estate. Similarly, no creditor of the Plaintiffs will have any right to receive any proceeds of claims asserted by the putative class members. The claims of the unnamed debtors will in no way impact the "rights, obligations and choices of action" of the Plaintiffs themselves. *See Zale Corp.*, 62 F.3d at 752. The adjudication of the claims of individuals having no relationship (legal or otherwise) with the individual Plaintiffs simply cannot be said to have any impact on the individual Plaintiffs' obligations and rights of action. *See id.*

In short, these purported class claims do not and cannot "relate to" the Bankruptcy Cases, and, as a result, jurisdiction cannot exist over such claims under 28 U.S.C. § 1334. *Wood*, 825 F.2d at 93; *U.S. Brass*, 301 F.3d at 304; *Walker*, 51 F.3d at 568-69; *Federal Deposit Ins. Corp. v. Majestic Energy Corp. (In re Majestic Energy Corp.)*, 835 F.2d 87, 90 (5th Cir. 1988).

### 3. Under the plain language of 28 U.S.C. § 157, the District Court cannot refer absent class members' claims for decision by this Court.

Moreover, the Court should also find that it does not possess jurisdiction over any *nationwide* class because the scope of jurisdiction that may be referred to this Court under 28

4

U.S.C. § 157 is narrower even than that provided under 28 U.S.C. § 1334. Section 157(a) establishes the scope of jurisdiction that a district court may refer to the bankruptcy court:

> <u>Each district court</u> may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or relating to <u>a case</u> under title 11 shall be referred <u>to the bankruptcy judges for the district</u>.

28 U.S.C. § 157(a) (emphasis added). Section 157(a) does not permit the district courts to refer proceedings in cases filed in other districts to the Article I bankruptcy courts in their own districts nor does section 157 permit district judges to refer proceedings filed in their own districts to bankruptcy courts in other districts. *See id.* Likewise, section 157(a) does not allow a district court to refer a proceeding (such as a multi-district debtor class action of the type alleged here) that necessarily arises in or relates to multiple "cases" under title 11. Section 157(a) only allows referral of proceedings "arising in or relating to <u>a case</u> under title 11." *Id.*

Similarly, section 157(b) authorizes bankruptcy courts to exercise jurisdiction over the following categories of cases:

> (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, <u>or arising in a case under title 11, referred under subsection (a) of this section,</u> and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. §157(b).[1] Section 157(b) does not authorize a bankruptcy court to hear any case or proceeding arising in a title 11 case filed anywhere in the state or the country. *See id.* Rather, the proper interpretation of section 157(b) is that it authorizes a bankruptcy court to hear matters arising in the title 11 case referred to that bankruptcy court. *See id.*

The majority of courts to address this issue have concluded that a bankruptcy court's jurisdiction is limited by 28 U.S.C. § 157 such that the court may not hear claims on behalf of

---

[1] In section 157(b)(2), Congress listed examples of the types of core proceedings that a bankruptcy court may hear under section 157, all of which relate in one way or another to the administration of the particular bankruptcy estate or case pending before the court. 28 U.S.C. §157(b)(2).

5

putative class members who were debtors in other courts or jurisdictions. *See, e.g., Cline v. First Nationwide Mortgage Corp.*, 282 B.R. 686, 696 (W.D. Wash. 2002); *Williams v. Sears, Roebuck & Co.*, 244 B.R. 858, 864-68 (S.D. Ga. 2000); *Knox*, 237 B.R. at 693-94; *Lenoir v. GE Capital Corp. (In re Lenoir)*, 231 B.R. 662, 667-68 (Bankr. N.D. Ill. 1999); *Guetling v. Household Financial Services, Inc.*, 312 B.R. 699, 704 (M.D. Fla. 2004); *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 449 (D.R.I. 2002). Indeed, several of the decisions from the Northern District of Illinois go even further, holding that bankruptcy courts lack jurisdiction to certify any class of debtors to pursue a claim that will have no effect on the pending bankruptcy case or the amount of property available for distribution to creditors. *See, e.g., Lenoir*, 231 B.R. at 667-68; *Knox*, 237 B.R. at 693-94.

In their Response, the Plaintiffs rely exclusively on that minority of courts that have allowed bankruptcy courts to certify classes that go beyond the claims of debtors in that judicial district. Response at page 19, n. 13. The Response dwells at length on the facts and reasoning in *In re Noletto*. Nevertheless, despite the Plaintiffs' belabored examination of this case and their strained protestations to the contrary, the Plaintiffs' position that this Court may certify a multi-district class of debtors to pursue claims against CTB constitutes, at best, a minority position among the circuits. This Court should refrain from the judicial adventurism advocated by the Plaintiffs and adopt the majority rule that prohibits multi-district class actions of the sort sought by the Plaintiffs.

In conclusion, the Plaintiffs have not refuted CTB's argument that this Court lacks subject matter jurisdiction over the putative class claims. This Court should therefore grant the Motion to Dismiss for lack of subject matter jurisdiction. In addition to the Court not having

jurisdiction order the putative class claims, the court also lacks jurisdiction over the plaintiff's individual claims.

> **B.    There are no private rights of action under the Bankruptcy Code provisions and Bankruptcy Rule relied upon by the Plaintiffs.**

Despite the Plaintiffs' arguments to the contrary, the Bankruptcy Code does not provide a private right of action for the claims the Plaintiffs have asserted. Indeed, the Plaintiffs do not seriously dispute this, but instead argue that section 105 of the Code can substitute for private rights of action to enforce Code provisions. The law in this Circuit is clear, however, that section 105 does not create substantive rights and does not provide Bankruptcy Courts with a "roving commission to do equity". *Wells Fargo Bank of Tex., N.A. v. Sommers (In re Amco Ins.),* 444 F.3d 690, 695 (5th Cir. 2006), *cert. denied* 127 S.Ct. 389 (2006); *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 523 (5th Cir. 2004); *Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994).

The Fifth Circuit Court of Appeals in *Campbell* recognized generally that section 105 is available to impose sanctions on who may attempt to abuse the procedural mechanisms within the Court. *Campbell v. Countrywide Homes Loans, Inc.* at 356 (5th Cir. 2008). However, *Campbell* did not expand the power of the court in any way and does not stand for the proposition that section 105 creates a cause of action which may be asserted in an adversary proceeding as Plaintiffs would have this court believe

CTB's Motion to Dismiss examined sections 501 and 502 of the Code and Rule 3001 provisions for which the Plaintiffs seek to pursue a private remedy and explained why, under their plain language and established Supreme Court precedent, there are no private rights of action for violation of those provisions. As noted by CTB, and unrefuted by the Plaintiffs, the provisions cited by the Plaintiffs in an effort to support their claims not only lack explicit private

rights of action, but each also fails to satisfy the *Cort v. Ash* criteria for an implied private right of action. *See* 422 U.S. 66, 78 (1975). For this reason alone, the Plaintiffs' claims under sections 105, 501, 502 and Rule 3001 should be dismissed.

> **1. Section 105 cannot create a private right of action where the Bankruptcy Code and Bankruptcy Rules do not provide one.**

The Plaintiffs fail to make a compelling argument that private rights of action exist for the claims asserted, and instead contend that each Code section or Rule can be enforced through section 105 of the Code. The law is clear, however, that section 105--which itself contains no private right of action--cannot be used to graft private rights onto other sections of the Code that do not provide for them. *See e.g.*, *Joubert*, 411 F.3d at 456 (parties cannot use section 105 to create a private right of action for debtors under section 506); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000); *see United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). As the Fifth Circuit has stated, section 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Sutton,* 786 F.2d at 1308. The Plaintiffs ignore this authority, and espouse a theory that section 105 empowers a bankruptcy court to create private rights of action entitling them to awards of damages anywhere it sees fit.[2]

Interpreting the Bankruptcy Code is "a holistic endeavor that requires consideration of a statutory scheme in its entirety." *Meeks v. West*, 216 F.3d 1363, 1367 (Fed. Cir. 2000) (citing *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454-55 (1993)). Yet, the Plaintiffs' position that section 105 confers private rights of action for any violation of the

---

[2] The Plaintiffs' reliance on dicta in the U.S. Supreme Court's recent decision, *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105, 1111-12 (2007), to support a private right of action is misplaced. *Marrama* nowhere rules (or even implies) that sections 105 and 501 and 502 create a private right of action of the sort claimed by the Plaintiffs. *Id*. Any suggestion that *Marrama* supports the Plaintiffs' conclusions badly misconstrues the holding of that case.

8

Code, even where the Code is silent, turns a blind eye to the statutory scheme that Congress actually enacted. For example, it would render superfluous provisions such as section 362(k)--in which Congress explicitly provided private rights of action for damages.[3] Such a result is inconsistent with the Code's structure, its plain language, and Congress's clear intent. *See Casas v. American Airlines, Inc.*, 304 F.3d 517, 523 (5th Cir. 2002) (stating that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others").

Considering the narrow interpretation of section 105 propounded by the Fifth Circuit Court of Appeals, one can reasonably conclude that it would more likely adopt the position of courts like *Joubert v. ABN AMRO Mortgage Group, Inc. (In re Joubert)*, 411 F.3d 452, 456 (3d Cir. 2005), that have refrained from finding a private cause of action under section 105 and other sections of the Code rather than the expansive view of those provisions offered by the cases cited in the Plaintiffs' Response, such as *Bessette v. Avco Financial Services, Inc.*, 230 F.3d at 444.[4] Subsequent decisions have in fact criticized *Bessette* for taking too broad an interpretation of a bankruptcy court's powers under section 105. *See, e.g., Pertuso,* 233 F.3d at 423 n.1 (rejecting the position articulated in *Bessette* that violations of section 524 may be enforced pursuant to broad remedies under section 105). The Plaintiffs' reliance on far-reaching cases such as *Bessette* is therefore misplaced. The Fifth Circuit Court of Appeals is unlikely to stretch section 105 to accommodate all the relief the Plaintiffs are seeking.

---

[3] In relevant part, 11 U.S.C. § 362(k) provides: "Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k).

[4] CTB is aware that this court adopted the *Bessette* reasoning in *Rodriguez v. Countrywide*, 396 BR 436, 457-58 (Bankr. S.D. Tex. 2008) and urges the court to reconsider its position.

9

By the same token, section 105 does not provide a private right of action for contempt in order to enforce Sections 501 and 502 and Rule 3001.  In seeking imposition of sanctions for an alleged fraudulent proof of claim, debtors in other cases have also asserted a right of action for violations under Official Form 10 (*In re Sims,* 278 B.R. 457, 469-70 (Bankr.E.D.Tenn. 2002)), 11 U.S.C. § 502, (*In re Sims,* 278 B.R. at 466), and 18 U.S.C. § 152 (*Wood v. United States (In re Wood),* 341 B.R. 804, 812 (Bankr.S.D.Fla.2006), and *In re Szabo Contracting, Inc.,* 283 B.R. 242 (Bankr. ND Ill. 2002)).  In each instance, the courts concluded these actions were unavailable to serve as a basis for an award of sanctions for a false or fraudulent proof of claim.

There is a mechanism for the court to adjudicate the merits of a proof of claim that does not comport with the Code or Rules – the claims objection process.  There is no need for utilization of section 105 to fill in a gap in the process as to rein in a party who is not participating in the bankruptcy system or submitting itself to the jurisdiction of the court.  As the Response states, "the claim process is fundamental to bankruptcy and the rules are clear".  Response at page 12.  This begs the question:  Why then would utilization of section 105 be necessary or appropriate?

In the end, the Plaintiffs argue that section 105 provides a broad, expansive, and seemingly limitless power to enforce the purposes of the Bankruptcy Code.  Such an interpretation is plainly wrong and was rejected by the Fifth Circuit in *Sutton.*  As *Sutton* held, section 105 allows courts to enforce the *purposes of the substantive provisions* of the Bankruptcy Code – meaning section 105 can be used to issue orders to enforce substantive rights where they already exist.  786 F.2d at 1308; *see also Pertuso*, 233 F.3d at 423 (section 105 cannot be used by a court to "legislate" remedies).  It certainly does not, as the Plaintiffs suggest, empower an individual plaintiff to pursue a multi-district, nationwide, class action involving myriad putative

plaintiffs in order to enforce an individual plaintiff's perception of what the "purposes of the Bankruptcy Code" should be. Such a lawsuit, by its very nature, asks this Court to act as a "roving commission to do equity," – precisely what *Sutton* forbids. 786 F.2d at 1308. For this reason, this Court should deny the Plaintiffs' effort to import private rights of action into provisions of the Bankruptcy Code where they were never intended by Congress.

### C. The Court lacks the jurisdiction to issues the sanctions requested

In order to seek damages, let alone recovery on behalf of a class, the Plaintiffs must have more than a potential contempt claim--they must have a private right of action that would permit them to pursue the court of litigation they have initiated in this case. As the weight of authority is unambiguous that there is no such private right to enforce sections 501, 502 and Rule 3001, the Plaintiffs' claims under the statute should be dismissed.

The contempt relief Plaintiffs seek is inappropriate for the Court's consideration. First, the sanctions Plaintiff seek could only be awarded in criminal contempt and the Bankruptcy Court lacks criminal contempt powers. Any monetary penalty awarded in this case would be in the nature of a criminal contempt penalty and bankruptcy courts lack criminal contempt powers.

Because the proper classification of a contempt sanction requires an examination of its "character and purpose," a court must look to the "character of the relief" to decide whether a sanction is criminal or civil. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 827 (1994). A fine will be considered a civil sanction if a party can avoid the fine through compliance or if it is designed to compensate a party for the contemnor's conduct. *Id.* at 829. However, a flat fine, "totaling even as little as $50 is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id.* at 829.

11

Plaintiffs cite to *BFG Investments, L.L.C. v. Texas State Bank (In re TBYRD)*, 2007 Bankr. LEXIS 4051 (Bankr.S.D.Tex., November 30, 2007) in support of their assertion that monetary sanctions can be issued in this proceeding. This Court distinguished between the Rule 9011 sanctions ordered in that case and criminal sanctions based on the fact that there was no alternative mechanism for relief. *Id*. at 4. Further, the sanctions at issue in that case were issued pursuant to Rule 9011, which expressly authorizes the imposition of "an order to pay a penalty into court". In this case, the Plaintiffs ask that sanctions be issued pursuant to section 105. However, here, a remedy exists for failure to comply with sections 501 and 502 and Rule 3001 – the possibility of disallowance of all or a portion of the claim.

Plaintiff as a matter of law cannot be pursuing civil contempt because any imposition of "monetary sanctions" would not compensate the debtors or coerce compliance with a court order. See *Bagwell*, 512 U.S. at 827. Rather, the sanctions Plaintiffs seek are undoubtedly punitive in nature and aimed at vindicating the authority of the Court and addressing an alleged "persistent abuses of the Code". Response at 2.

The damage sought by Plaintiffs is not designed to compensate or compel compliance with a court order. Plaintiffs ignore the fact that this Court cannot use contempt to enforce another court's order, yet another reason this class action is not tenable.

### III. THE PLAINTIFFS HAVE FAILED TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

**A. Even if the Plaintiffs had a private right of action under the Bankruptcy Code provisions and Rule cited, the Plaintiffs have failed to state any claim for a violation of those provisions.**

Even if the Plaintiffs had one or more private rights of action under the provisions of the Code and Rules as they have alleged, the Plaintiffs' Response does not adequately address the

fact that the allegations in their Complaint do not support the elements of the various causes of action asserted.[5]

To satisfy *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) and Rule 12, the factual allegations pled *in the Plaintiffs' Complaint*[6] must establish each element in their causes of action. Here, as detailed in CTB's opening brief and below, the Plaintiffs have failed to plead facts demonstrating that the amounts alleged to be owed in the proof of claim were in fact not owed. Rather, the Plaintiffs take issue with the classification of the categories of claims on one page of the proof of claim, while ignoring completely the broader description of the same claims on the prior page of the Proof of Claim.[7] Those facts do not assert claims "plausible on their face" that CTB filed a "false" proof of claim. *Twombly*, 127 S. Ct. at 1974.

*Twombly,* 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true…") (quotation marks and citations omitted); *Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.),* 495 F.3d 191, 205 (5th Cir. 2007).

In conclusion, the Plaintiffs have not satisfied the pleading requirements set forth in *Twombly*. 127 S. Ct. at 1964-65. This Court should therefore dismiss the claims asserted in their Complaint.

---

[5] Plainitffs devote considerable time in their Response to assertions with regards to efforts to obtain discovery. Response at 5-8. CTB disagrees with the Plaintiffs mischaracterization of the facts and reserves all rights and objections. Even if such allegations were accurate, which they are not, they demonstrate the uniqueness of the potential injury and thus why a class action is not tenable.

[6] Plaintiffs cannot introduce evidence or new factual allegations through their Response to the Motion to Dismiss. This Court must consider only the facts alleged in the Complaint itself to determine if the Plaintiffs have met their burden. *See*, *e.g.*, *Parish v. Frazier*, 195 F.3d 761, 763-64 (5th Cir. 1999); *Sullivan v. Monsanto Co.*, 555 F.Supp.2d 676, 682 fn.3 (E.D. La. 2008).

[7] Further, nowhere have Plaintiffs plead facts sufficient to demonstartate that that there is a pattern and practice by CTB. Each of the four cases cited in the Response involved legal entities other than CTB. Response at 9-10. Moreover, none of the cited related to the Barrett Daffin firm involve any Citi entity. Response at 11-12.

## **CONCLUSION**

For these reasons, and those set forth in its Motion to Dismiss, Citicorp Trust Bank, fsb respectfully requests that the Court grant its Motion to Dismiss and dismiss the Plaintiffs' Complaint.

<u>Dated</u>: May 4, 2009.

        DEFENDANT CITICORP TRUST BANK, fsb

        By its attorneys,

        /s/ *Elizabeth Freeman*
        Edwin R. DeYoung
        State Bar No. 05673000
        Federal I.D. No. 18828
        Roger Cowie
        State Bar No. 00783886
        Federal I.D. No 18886
        Locke Lord Bissell & Liddell LLP
        2200 Ross Ave., Suite 2200
        Dallas, TX 75201
        Telephone: (214) 740-8000
        Facsimile: (214) 740-8800

        and

        Elizabeth Freeman
        State Bar No. 24009222
        Federal I.D. No  25464
        600 Travis, Suite 3400
        Houston, Texas 77002
        Telephone:  (713) 226-1607
        Facsimile:   (713) 229-2694

## CERTIFICATE OF SERVICE

The undersigned certifies that this **Reply** was served electronically on **Karen L. Kellett,** counsel for the Plaintiffs, on May 4, 2009 pursuant to Local Rule CV 5.1.

        /s/ *Elizabeth Freeman*
        Elizabeth Freeman