

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
08/12/2009

| | | |
|---|---|---|
| IN RE: | § | |
| **ANGEL ROJAS**, *et al*, | § | **Case No. 07-70058** |
| Debtor(s). | § | |
| | § | **Chapter 13** |
| | § | |
| **ANGEL ROJAS**, *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **Adversary No. 09-07003** |
| | § | |
| **CITI CORP TRUST BANK FSB; fka** | § | |
| **TRAVELERS BANK & TRUST,** | § | |
| Defendant(s). | § | **Judge Isgur** |

<u>**MEMORANDUM OPINION**</u>

**Summary**

Angel and Yanett Rojas, on behalf of a putative nationwide class, seek relief based on defendant Citicorp Trust Bank's alleged practice of filing false proofs of claim. The Rojases allege that Citi filed proofs of claim in Plaintiffs' bankruptcy cases asserting amounts for fees and costs that were not in fact incurred or warranted under Plaintiffs' mortgage contracts. Plaintiffs seek damages and declaratory and injunctive relief pursuant to the Court's § 105 power to issue orders and judgments necessary to effectuate the provisions of the Bankruptcy Code. Citi seeks dismissal of the adversary, contending that this Court lacks subject matter jurisdiction over a nationwide class action and that § 105 does not authorize the Court to issue the relief Plaintiffs seek.

The Court denies Citi's motion. Section 1334 of Title 28 of the United States Code vests district courts with subject matter jurisdiction over claims based on alleged violations of the Bankruptcy Code. Section 157 of Title 28 of the United States Code allows the District Court to

refer bankruptcy matters to bankruptcy judges.  Pursuant to the District Court's General Order of Reference, bankruptcy matters in this District have been referred to the bankruptcy judges of this District.

Plaintiffs' claims are core bankruptcy claims that arise under the Bankruptcy Code and could only arise in the context of a bankruptcy case.  Nothing in the jurisdictional statute limits the District Court's subject matter jurisdiction (and, by extension, the matters that can be referred to the bankruptcy judges) to claims filed by debtors with bankruptcy cases pending in this District.  Nor is § 105's reach as limited as Citi contends.  Section 105 affords courts broad authority to issue any order or judgment necessary or appropriate to carry out the purposes of the Bankruptcy Code.  An order or judgment for all or some of the relief Plaintiffs seek may be necessary or appropriate.  No relief may also be appropriate.  What is necessary or appropriate can only be determined after the Court has had the opportunity to consider evidence at trial.  The Court only holds that it cannot dismiss Plaintiffs' claims before it knows what, if any, remedy is necessary or appropriate.

## Complaint

In 2000, the Rojases executed a $55,985.65 promissory note  and a deed of trust in favor of Citi.  The Rojases used the note proceeds to purchase their residence; the deed of trust secured the note with the residence.  In February of 2007, the Rojases filed a chapter 13 bankruptcy petition.  Citi timely filed a proof of claim.  The proof of claim listed a principal balance owed of $53,794.92 and arrearages of $29,044.19.   In addition to missed monthly payments, the arrearages included the following amounts:

▪ Escrow shortage: tax amount:          $3,136.10
▪ Attorney fees for prior bankruptcy:          $6,102.66
▪ Uncollected late charges:          $432.64
▪ Fax fee:          $15.00

▪ BPO:                                        $377.00
▪ Pre-con FCL:                                $2,912.27

The Rojases allege that most of the listed arrearage items were not owed.  The Rojases allege that they repeatedly requested an explanation of the amounts from Citi and never received an adequate response.  After filing an objection to Citi's proof of claim and requesting discovery, the Rojases allege that Citi's responses to discovery admitted inaccuracies and otherwise failed to explain the arrearage amounts.  For example, the Rojases allege that Citi admitted that the $6,102.66 attorney fee amount actually arose from at least five different fees, including fees for title search and recording, and tax search and payment.

On February 2, 2009, the Rojases filed an adversary proceeding against Citi.  The Rojases filed the adversary on behalf of a putative nationwide class consisting of: "Individual debtors who filed for protection under the United States Bankruptcy Code after January 1, 1999, and in which Citicorp filed a proof of claim."

The Rojases allege that Citi's conduct violates §§ 501 and 502 of the Bankruptcy Code and Rule 3001 of the Federal Rules of Bankruptcy Procedure. Sections 501 and 502 and Rule 3001 provide for the manner in which proofs of claim must be filed and when claims must be allowed or disallowed.  Plaintiffs seek actual and punitive damages, legal fees, and declaratory and injunctive relief based on the Court's § 105 power.

**Motion to Dismiss**

On March 13, 2009, Citi filed a motion to dismiss. The motion to dismiss argues that this Court lacks the authority to adjudicate the Rojases' complaint and issue the remedies the Rojases seek.  Citi alleges that this Court lacks subject matter jurisdiction over a nationwide class of debtors who have or had bankruptcy cases in courts around the country.  Citi also alleges that nothing in the Bankruptcy Code, including § 105, authorizes the Rojases to bring this lawsuit.

Instead, Citi alleges that the putative classes' remedy is limited to contempt sanctions under Rule 9011 and each putative class member can only seek contempt sanctions individually and before the court in which the separate bankruptcy petitions were filed.

Plaintiffs' class action is one of four class actions filed by debtors against mortgage lenders in the McAllen and Brownsville divisions of the Southern District of Texas.  Many of the same attorneys have represented the plaintiff classes and mortgage lender defendants.  The Court has issued lengthy memorandum opinions and reports and recommendations in the other class actions.  Citi's motion to dismiss largely asserts the same arguments this Court has resolved in its prior rulings.  With one exception, Citi's briefs did not present arguments or cases not previously considered in the prior rulings.

During the April 20, 2009 hearing, the parties agreed that the Court's prior rulings considered all but one issue raised in Citi's motion.  Accordingly, the Court denies the bulk of Citi's motion based on its prior rulings. *Cano v. GMAC Mortgage Corp. (In re Cano)*, Case No. 02-70359, Adv. No. 08-07019 (Bankr. S.D. Tex. August 10, 2009); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 396 B.R. 436 (Bankr. S.D. Tex. 2008); *Padilla v. Wells Fargo Home Mortgage, Inc. (In re Padilla)*, 379 B.R. 643 (Bankr. S.D. Tex. 2007).

The Court does note a significant distinction between the Rojases' claims and claims presented by Plaintiffs in the *GMAC* case.  In *GMAC*, the Court dismissed Plaintiffs' claims under chapter 13 of the Bankruptcy Code. *Cano v. GMAC Mortgage Corp. (In re Cano)*, Case No. 02-70359, Adv. No. 08-07019 (Bankr. S.D. Tex. August 10, 2009).  The Court noted that the chapter 13 provisions are permissive provisions that provide what a debtor can put in a plan.  The provisions have no effect prior to plan confirmation.  Rights only arise from the provisions after the court has issued an order confirming a plan that incorporates those rights.  Ultimately, the

court order gives rise to the rights.

Section 502, unlike chapter 13 provisions, creates a right independent of a court order. Under § 502, a claim filed pursuant to § 501 and Rule 3001 is deemed allowed upon filing. *In re Today's Destiny, Inc.*, 2008 WL 5479109 (Bankr. S.D. Tex. Nov. 26, 2008). Upon filing, the claim creates a right to payment from the bankruptcy estate. In most instances, the court never issues an order allowing the claim. Accordingly, filing a false proof of claim in contravention of § 501 and Rule 3001 would constitute an abuse of process. Just as the Court must enforce Rule 2016 to ensure compliance with court orders confirming plans and the Code provisions incorporated by the plans, the Court must also enforce the Code provisions and Rules governing filing proofs of claim to prevent an abuse of process.

The Court now considers whether § 105 authorizes this Court to afford the relief sought by the Rojases.

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409. This is a core proceeding under § 157(b)(2).

## Analysis

### 1. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The issue in a 12(b)(6) motion is whether a plaintiff is entitled to offer evidence to support his claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, S. Ct. 3012, 82 L. Ed. 2d 139 (1984). The Court must determine, "in the light most favorable to the plaintiff, whether the complaint states any

5

valid claim for relief." *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir. 1994). All facts plead must be specific, not merely conclusory. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). All well-pleaded allegations contained in the plaintiff's complaint must be accepted by the court as true. *Albright v. Oliver,* 510 U.S. 266, 268, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994). A plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

The Supreme Court recently further clarified a plaintiff's pleading requirement. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court noted two principles courts should follow when evaluating a pleading. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 1949. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common senses." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]—'that the pleader is entitled to relief.'" *Id*.

The Rojases have plead sufficient facts to survive dismissal under Rule 12(b)(6).  The Court described the Rojases' pled facts earlier in this Memorandum Opinion.  The factual allegations are specific and plausible.  As set forth below, the pled facts, if proven true, would plausibly entitle the Rojases' to the relief they seek.

### 2. Section 105

The Rojases' complaint, at its core, seeks relief pursuant to the Court's § 105 powers. Citi contends that § 105 does not authorize private rights of action where the specific Bankruptcy

Code provisions allegedly violated do not give rise to a private right of action. Even if the Rojases could bring their claims through § 105, Citi contends that § 105 does not authorize the remedies the Rojases seek. Citi contends that § 105 authorizes only civil contempt sanctions and civil contempt sanctions cannot be punitive or issued by a court other than the court in which the contemptuous conduct allegedly occurred.

### A. Section 105 and Private Rights of Action

Citi contends that § 105 does not authorize private rights of action where the specific Bankruptcy Code provisions allegedly violated do not give rise to a private right of action. This Court has considered and resolved this issue in prior Memorandum Opinions. *In re Cano*, Case No. 02-70359, Adv. No. 08-07019 (Bankr. S.D. Tex. August 10, 2009); *In re Rodriguez*, 396 B.R. 436.

Citi's private cause of action argument is not novel. Other defendants have raised the same argument against complaints for violation of the discharge injunction, a confirmed plan, and an order confirming a plan. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1062 (5th Cir. 1997) (noting that the defendant "argues that any affirmative right conferred by 11 U.S.C. § 524(a) does not confer an independent federal cause of action."); *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 444 (1st Cir. 2000) ("The appellee, however, disputes the existence of an implied right of action [for violation of § 524(a)] based upon the four-factor analysis used to determine Congress's intent, set out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975)."). Both the *Gypsum* and *Bessette* Circuit Courts rejected the defendants' argument.

The "private right of action" argument that Citi formulates from the Supreme Court's *Cort v. Ash* opinion is a red herring. In the *Cort v. Ash* line of cases, plaintiffs sought relief from

the statutory provision allegedly violated.  The plaintiffs asked the court to carve out of the particular provision a remedy that the statute did not provide. For example, in *Cort*, the plaintiffs contended that defendants violated 18 U.S.C. § 610, a criminal statute that prohibited corporations from making certain contributions to Presidential or Vice Presidential elections. *Cort*, 422 U.S. at 68.  The plaintiffs asked the court to create an implied private cause of action for damages out of the same statute the defendants allegedly violated, 18 U.S.C. § 610. *Id*.

In this adversary proceeding, the Rojases do not ask the court to imply a private right of action from the Code provisions allegedly violated.  Rather, the Rojases request relief arising from the Court's inherent authority, and the Court's § 105 authority to issue orders necessary and appropriate to effectuate the purposes of the Bankruptcy Code.  The complaint is, at its heart, a complaint seeking relief under the Court's inherent authority and § 105.

In *Bessette*, the First Circuit considered a defense identical to Citi's. *Bessette*, 230 F.3d 439. In *Bessette*, a class alleged that defendants violated the discharge injunction by coercing debtor class members into signing reaffirmation agreements for pre-petition, discharged debt. *Id*. at 442. The *Bessette* defendants, like Citi, alleged that § 524, the discharge injunction, did not create a private cause of action. *Id*. at 444. The First Circuit emphatically rejected the defendants' argument, holding that the plaintiffs could bring complaints seeking relief for violations of Bankruptcy Code provisions that create or enforce important rights. *Id*. at 444–45. The *Bessette* Court held:

> As this Court has previously recognized, "[s]ection 105(a) empowers the bankruptcy court to exercise its equitable powers—where 'necessary' or 'appropriate'—to facilitate the implementation of other Bankruptcy Code provisions." *Noonan v. Secretary of Health & Human Servs. (In re Ludlow Hosp. Soc'y, Inc.)*, 124 F.3d 22, 27 (1st Cir. 1997); *see also SPM Mfg. Corp. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993); *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991). While it is true that the considerable discretion conferred on courts sitting in bankruptcy by § 105 is not unlimited, in that it is not

8

'a roving commission to do equity,' *Noonan*, 124 F.3d at 27 (quoting *Chiasson v. J. Louis Matherne & Assocs.*, 4 F.3d 1329, 1334 (5th Cir. 1993)), a court is well within its authority if it exercises its equitable powers to enforce a specific code provision, *see id.; SPM Mfg.*, 984 F.2d at 1311, such as § 524. Thus, § 105 does not itself create a private right of action, but a court may invoke § 105(a) "if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code," *Noonan*, 124 F.3d at 28, so long as the court acts consistent with the Code and does not alter the Code's distribution of other substantive rights, *see id.; SPM Mfg.*, 984 F.2d at 1311 . . .

Against this background it is clear . . . that a bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages . . . if the merits so require. Consistent with this determination, bankruptcy courts across the country have appropriately used their statutory contempt power to order monetary relief, in the form of actual damages, attorney fees, and punitive damages, when creditors have engaged in conduct that violates § 524. *See, e.g., In re Hardy*, 97 F.3d at 1389–90; *In re Elias* 98 B.R. at 337; *Cherry*, 247 B.R. at 191; *In re Arnold*, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997); *Wiley v. Mason (In re Wiley)*, 224 B.R. 58, 66 (Bankr. N.D. Ill. 1998) (denying motion to dismiss), *vacated on other grounds*, 237 B.R. 677 (Bankr. N.D. Ill. 1999 (finding class representative inadequate because she suffered no injury); *Mathews*, 184 B.R. at 599–601; *In re Bowling*, 116 B.R. 659, 664–65 (Bankr. S.D. Ind. 1990); *cf. In re Rosteck*, 899 F.2d 694, 697 (7th Cir. 1990) (affirming sanction for violation of § 524 without reference to § 105 contempt powers). Therefore, we hold that § 524 is enforceable though § 105. *See Malone*, 245 B.R. at 395.

*Id.* at 445.

As the First Circuit noted, the Court "see[s] no reason to jump into the fray with the complex analysis required by *Cort v. Ash* when a remedy is readily and expressly available through another section of the Bankruptcy Code, namely, § 105(a)." *Id*. at 444.

### B. Section 105 and Civil Contempt Authority

Citi alternatively contends that § 105 does not authorize the remedies the Rojases seek. Citi contends that the court's § 105 authority is limited to civil contempt sanctions and civil contempt sanctions cannot be punitive or issued by a court other than the court in which the contemptuous conduct allegedly occurred. Citi's argument is based on the assumption that § 105 is but a statutory codification and supplantation of bankruptcy courts' inherent civil contempt

9

authority.   Citi's assumption is incorrect.   The Court's prior Memorandum Opinions have explained the distinction between bankruptcy courts' inherent authority and § 105 authority.   *In re Cano*, Case No. 02-70359, Adv. No. 08-07019 (Bankr. S.D. Tex. August 10, 2009); *In re Rodriguez*, 396 B.R. 436.

Bankruptcy Courts have both inherent contempt authority and statutory equitable authority under § 105.   The two are not indistinguishable.   The former is inherent to all courts, while the latter is rooted in statute.   Bankruptcy courts have inherent civil contempt authority. *In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008) ("It is well-settled that a federal [bankruptcy] court, acting under inherent authority, may impose sanctions against litigants or lawyers . . ."); *Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.)*, 92 F.3d 1539, 1553 (11th Cir. 1996). "In a nutshell: Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to 'achieve the orderly and expeditious disposition of cases.'" *In re Jove Eng'g*, 92 F.3d at 1553 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). The Court's "inherent powers arise independently of any statute or rule." *Id*. Section 105 of the Bankruptcy Code provides independent statutory contempt and other authority. *Id*. ("Distinct from the court's inherent powers" are statutory contempt powers that § 105(a) grants in the bankruptcy context.); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1049 (7th Cir. 2000) ("To begin with, the bankruptcy court acted pursuant to its statutory authority under 11 U.S.C. § 105(a) as well as its inherent powers.").

Section 105's plain language grants bankruptcy courts broad remedial authority beyond what is available pursuant to a court's inherent contempt authority.  Section 105(a) provides:

> The Court may issue **any order, process, or judgment that is necessary or appropriate** to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua

> sponte, taking any action or making any determination **necessary
> or appropriate to enforce or implement court orders or rules, or
> to prevent abuse of process.**

11 U.S.C. § 105(a) (emphasis added).

Section 105(a) provides that the court may issue *any* "judgment" necessary or appropriate to carry out requirements of the Bankruptcy Code. Section 105 does not require a court to use the least restrictive means to carry out the requirements of the Code. Section 105(a) does not say that the Court's authority is limited to orders or judgments *necessary* to carry out the Code. Rather, Congress explicitly added to the statute deferential, discretionary language with "or appropriate." Courts must give effect to a statute's plain language. *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989). Just last year, the Supreme Court emphasized the Court's broad authority under § 105 and the need to apply § 105 according to its terms. In *Marrama*, the Supreme Court held that, under § 105, bankruptcy courts have "broad authority . . . to take any action that is necessary or appropriate 'to prevent the abuse of process.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007); *U.S. v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986).

The differences between inherent contempt authority and § 105 authority are further evidenced by the wide array of remedies courts have issued pursuant to § 105. Courts have used § 105 to grant plaintiffs a broad range of remedies, including any damage remedy available in a private cause of action. *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997) ("Reading [§ 105(a)] under its plain meaning, we conclude that a bankruptcy court can issue *any* order, *including* a civil contempt order, necessary to carry out the provisions of the bankruptcy code . . . which compensate a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11

11

U.S.C. § 1141 . . .") (emphasis added); *Jove Eng'g, Inc.*, 92 F.3d at 1554 ("Therefore, the plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensative or punitive, as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code.") (emphasis in original). *See also In re Gervin*, 337 B.R. 854, 857–58 (Bankr. W.D. Tex. 2005); *In re Harris*, 297 B.R. 61, 70–71 (Bankr. N.D. Miss. 2003).

Accordingly, the Court rejects Citi's arguments based on the assumption that the Court's § 105 power is limited to civil contempt sanctions.

### C. Section 105 and Rule 9011

Citi alleges that bankruptcy courts cannot use § 105 when other procedural rules would also apply. Citi contends that bankruptcy courts can prevent the alleged abuses in the proofs of claim process through claim objection hearings and the sanctioning authority provided by Federal Rule of Bankruptcy Procedure 9011. Citi's argument ignores the plain language of § 105 and the Supreme Court's teaching that the fundamental purpose of § 105 is to avoid the expense and delay of bifurcated and multi-faceted litigation by affording bankruptcy courts the authority to fashion equitable remedies that accomplish the aggregate result of piece-meal litigation with a single order or judgment. *Marrama*, 549 U.S. at 375.

Of course, bankruptcy courts may not use § 105 to create new substantive rights or contravene specific Code provisions. *U.S. v. Waindel (In re Waindel)*, 65 F.3d 1307, 1309 (5th Cir. 1995). However, nothing in § 105's plain language limits a court's exercise of § 105 if a procedural rule also applies. Nor has Citi referenced a court opinion reading such a limitation into § 105. Indeed, the case law is directly contrary to Citi's position.

The Fifth Circuit recently issued an opinion explicitly stating that abuse of the proofs of claim process can be remedied through the Court's § 105 power. *Campbell v. Countrywide Home*

*Loans, Inc.*, 545 F.3d 348, 356 n.1 (5th Cir. 2008).  Other Fifth Circuit opinions have upheld bankruptcy court sanction awards issued pursuant to § 105 based on conduct that would also give rise to sanctions under Federal Rule of Bankruptcy Procedure 9011. *Sommers v. Barry (In re Cochener)*, 297 Fed. Appx. 382 (5th Cir. 2008); *Friendly Fin. Discount Corp. v. Tucker (In re Tucker)*, 224 F.3d 766 (5th Cir. 2000).

Supreme Court precedent further clarifies that the applicability of a procedural rule does not prelude application of § 105.  In *Chambers*, the Supreme Court held that courts could use their inherent authority to sanction parties even though procedural rules would also provide a remedy. *Chambers v. Nasco, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 ( 1991). In *Chambers*, the district court relied on its inherent authority to sanction Chambers for attempting to deprive the court of jurisdiction by fraud, filing false and frivolous pleadings, and engaging in delay, oppression, and harassment tactics. *Id*. at 41. Chambers argued that the district court could not use its inherent authority when other procedural rules, like Rule 11, existed to accomplish the same result. *Id*. at 42–43.

The Supreme Court rejected Chambers' contention, holding that procedural rules do not displace a court's inherent authority or preclude a court's exercise of its inherent authority when a procedural rule may also apply. *Id.* at 46. ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displace the inherent power to impose sanctions for the bad-faith conduct described above."). Federal courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id*. at 50. The Supreme Court held that a court's use of inherent authority is particularly warranted when it will avoid "extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." *Id*. at 51.

Though *Chambers* considered a court's ability to fashion an equitable remedy under its inherent authority rather than the § 105 authority, the Court finds *Chambers* equally applicable to § 105. The courts' inherent authority and § 105 are both rooted in equitable concerns. Both exist to accomplish the same purpose: fashioning equitable remedies to curb abuses. Avoiding inefficient and unnecessary litigation is a factor of primary importance in any equitable consideration, whether under inherent authorities or § 105.

The Seventh Circuit has applied *Chambers'* logic to the § 105 context and explicitly found that a bankruptcy court could sanction a party under § 105 even though Federal Rule of Bankruptcy Procedure 9011 was also applicable. *In re Rimsat*, 212 F.3d at 1049. The Seventh Circuit held:

> Moreover, a sanctioning court is not required to apply available statutes and procedural rules in a piecemeal fashion where only a broader source of authority is adequate to justify all the necessary sanctions. *Chambers*, 501 U.S. at 50–51, 111 S. Ct. 2123. The bankruptcy court was justified in resorting to 11 U.S.C. § 105(a) and its inherent powers in order to ensure that all the culpable parties received an appropriate sanction and did not abuse its discretion in declining to sanction Factor under Bankruptcy Rule 9011 or 7026.

*Id*. Lower courts have also followed *Chambers*' teaching to hold that the applicability of procedural rules does not preclude use of § 105. *In re Varona*, 388 B.R. 705, 717 (Bankr. Ed. Va. 2008) ("Despite the availability of other statutory or rule-based remedies, the Court's power to remedy and punish for the filing of a false or fraudulent claim is within the strictures of its authority pursuant to 11 U.S.C. § 105."); *In re Cochener*, 297 Fed. Appx. 382.

The use of § 105 rather than procedural rules is particularly appropriate in the context of a nationwide class action. The alternative to a putative class seeking relief based on § 105 would be thousands of individual motions filed before dozens of different judges in multiple states. *Chambers* and *Marrama* stand for the proposition that an underlying purpose of § 105 is to

afford bankruptcy courts the authority to avoid protracted and multifaceted litigation when the inevitable result of that litigation can be provided with one stroke pursuant to § 105.

The Supreme Court's *Chambers* opinion was rooted in the principle that courts should use equitable powers to avoid "extensive and needless satellite litigation, which is contrary to the aim of the Rules themselves." 501 U.S. at 51. The Supreme Court's latest analysis of § 105 reiterated that § 105 should be used to fashion equitable remedies that avoid unnecessary and protracted litigation. *Marrama*, 549 U.S. 365.

In *Marrama*, the Supreme Court held that a bankruptcy court could use § 105 to dismiss a case directly without first allowing a debtor to engage in a futile conversion that would ultimately end with the same result. 549 U.S. 365. Marrama, a chapter 7 debtor, made numerous false statements in his schedules. *Id*. at 368. To avoid the consequences of these false statements, Marrama attempted to convert his case to a chapter 13 case pursuant to § 706(a). *Id*. at 368–69. Marrama argued that § 706(a) gave debtors an automatic right to convert a chapter 7 case to a case under chapter 13. *Id*. at 370. Despite the apparent right to convert provided by § 706(a), the Supreme Court held that the bankruptcy court could use § 105 to dismiss the case outright. *Id*. at 374–75. The Court reasoned that a converted case would also be subject to dismissal based on Marrama's fraudulent conduct. *Id*. at 375. Accordingly, § 105 was "adequate to authorize an immediate denial of a motion to convert filed under § 706(a) in lieu of a conversion order that merely postpones the allowance of equivalent relief . . ." *Id*.

Citi may be correct that each member of the Rojases' putative class could individually seek sanctions pursuant to Rule 9011 from the court in which they filed their bankruptcy petition. But § 105 empowers this court to afford a remedy for the same conduct. Of course, prior to any exercise of such authority, this Court must be satisfied that the Rojases have demonstrated that

the facts regarding the putative class justify class relief.   The existence of subject matter jurisdiction only authorizes this Court to consider class relief; it does not pre-ordain the outcome.

### 3. Subject Matter Jurisdiction

Citi contends that a bankruptcy court's subject matter jurisdiction over claims asserted in an adversary proceeding are limited to claims that could affect the bankruptcy estate of the named plaintiff.   Citi also contends that the court with jurisdiction over a debtor's bankruptcy case has exclusive jurisdiction over all the debtor's claims.   The Court has considered and rejected these arguments in prior memorandum opinions. Citi has not raised any arguments or precedent not raised and considered in the prior memorandum opinions.   Accordingly, the Court denies Citi's subject matter jurisdiction arguments for the reasons set forth in *Cano, Rodriguez,* and *Padilla*. *In re Cano*, Case No. 02-70359, Adv. No. 08-07019 (Bankr. S.D. Tex. August 10, 2009); *In re Rodriguez*, 396 B.R. 436; *In re Padilla*, 379 B.R. 643.

### 4. Remedies

Citi alleges that the Rojases have failed to state a claim for declaratory and injunctive relief, punitive damages, and legal fees.   As discussed earlier in this Memorandum Opinion, § 105's power is broad and could authorize this Court to issue all the remedies the Rojases seek. Prior to the presentation of evidence, the Court cannot discern what, if any, remedy is appropriate.   Accordingly, the Court denies, as premature, Citi's arguments with respect to the Rojases' claims for declaratory and injunctive relief, punitive damages, and legal fees.

16

**Conclusion**

For the reasons set forth above, the Court denies Citi's motion to dismiss.  A separate order will be issued.

SIGNED **August 12, 2009.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE